# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| AMERICAN CENTER FOR INTERNATIONAL LABOR SOLIDARITY, et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> LORI CHAVEZ-DEREMER, et al., <br><br> *Defendants*. | Case No. 1:25-cv-01128 (BAH) |

## REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION OR, IN THE ALTERNATIVE, SUMMARY JUDGMENT

Stephanie Garlock (DC Bar No. 1779629)
Allison M. Zieve (DC Bar No. 424786)
Nicolas A. Sansone (DC Bar No. 1686810)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

*Counsel for Plaintiffs*

May 28, 2025

# TABLE OF CONTENTS

Table of Authorities ....................................................................................................... ii

Introduction ..................................................................................................................... 1

Argument ......................................................................................................................... 2

I.    This Court has jurisdiction over Plaintiffs' claims. ........................................... 2

    A.    The Court has jurisdiction over Plaintiffs' ultra vires claim. .................... 2

    B.    Neither the rights Plaintiffs assert nor the relief they request are contractual. ....... 3

    C.    The Court of Federal Claims lacks jurisdiction over Plaintiffs' claims. ................ 8

II.   Plaintiffs are entitled to summary judgment on their ultra vires and APA contrary-to-law claims and are likely to succeed on their arbitrary and capricious claim. .................. 11

    A.    Because Defendants acted without lawful authority, this Court should issue relief to undo their unlawful actions. ............................................................... 11

        1.    An ultra vires claim is available. ................................................... 11

        2.    This Court's intervention would solve, not create, a separation-of-powers problem. ............................................................................... 14

    B.    Defendants' actions violated the relevant appropriations statutes, the Impoundment Control Act, and the Anti-Deficiency Act. ................................... 15

        1.    Plaintiffs can bring their claims under the APA. ............................. 15

        2.    Defendants acted contrary to law. .................................................. 17

    C.    Defendants acted arbitrarily and capriciously. ....................................... 21

III.  Plaintiffs have established an entitlement to the requested preliminary and final relief. .... 21

    A.    Plaintiffs are suffering harm that cannot be remedied at law. ............................ 22

    B.    The balance of equities and public interest support relief. ................................. 23

    C.    The scope of relief requested is appropriate to remedy the violations of law. ..... 24

IV.   Defendants are not entitled to a bond or stay. ................................................. 24

Conclusion ..................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AIDS Vaccine Advocacy Coalition v. U.S. Department of State*,
No. 25-cv-00400-AHA, 2025 WL 752378 (D.D.C. Mar. 10, 2025) ........................... 6, 18

*American Bar Ass'n v. DOJ*,
No. 25-cv-1263-CRC, 2025 WL 1388891 (D.D.C. May 14, 2025) ................................. 3

*American Insurance Ass'n v. Garamendi*,
539 U.S. 396 (2003).................................................................................................. 14

*Armstrong v. Exceptional Child Center, Inc.*,
575 U.S. 320 (2015).................................................................................................. 11

\* *Bowen v. Massachusetts*,
487 U.S. 879 (1988)............................................................................................ 6, 7, 16

*Califano v. Yamasaki*,
442 U.S. 682 (1979).................................................................................................. 24

\* *Chamber of Commerce of United States v. Reich*,
74 F.3d 1322 (D.C. Cir. 1996).................................................................................. 2, 11

*Chicago Women in Trades v. Trump*,
No. 25-cv-2005, 2025 WL 1331743 (N.D. Ill. May 7, 2025).................................... 13, 17

*City & County of San Francisco v. Trump*,
No. 25-cv-01350-WHO, 2025 WL 1282637 (N.D. Cal. May 3, 2025)........................... 18

*City of New Haven v. United States*,
809 F.2d 900 (D.C. Cir. 1987).................................................................................... 18

*City of Wheeling, West Virginia v. United States*,
20 Cl. Ct. 659 (1990) ................................................................................................. 9

*Climate United Fund v. Citibank, N.A.*,
No. 25-cv-698-TSC, 2025 WL 1131412 (D.D.C. Apr. 16, 2025)................................. 4, 7

\* *Community Legal Services in East Palo Alto v. HHS*,
No. 25-2808, 2025 WL 1393876 (9th Cir. May 14, 2025)..................................... 5, 6, 17

*Community Legal Services in East Palo Alto v. HHS*,
No. 25-cv-02847-AMO, 2025 WL 1233674 (N.D. Cal. Apr. 29, 2025) ......................... 24

*Colorado v. HHS*,
    No. 1:25-cv-00121-MSM-LDA, 2025 WL 1426226 (D.R.I. May 16, 2025)........... 7, 8, 17

*Crowley Government Services, Inc. v. General Services Administration*,
    38 F.4th 1099 (D.C. Cir. 2022)................................................................... 2, 3, 4

*Dalton v. Specter*,
    511 U.S. 462 (1994)................................................................................. 12, 13

*Dart v. United States*,
    848 F.2d 217 (D.C. Cir. 1988)...................................................................... 11

*Department of Education v. California*,
    145 S. Ct. 966 (2025)................................................................................ 8

*Department of State v. AIDS Vaccine Advocacy Coalition*,
    145 S. Ct. 753 (2025)................................................................................ 8

*Department of Commerce v. New York*,
    588 U.S. 752 (2019).................................................................................. 16

*DHS v. Regents of the University of California*,
    591 U.S. 1 (2020)..................................................................................... 21, 24

*District of Columbia v. USDA*,
    444 F. Supp. 3d 1 (D.D.C. 2020)................................................................. 24

*Doe v. Trump*,
    288 F. Supp. 3d 1045 (W.D. Wash. 2017)................................................... 15

*DSE, Inc. v. United States*,
    169 F.3d 21 (D.C. Cir. 1999)...................................................................... 24

*Encino Motorcars, LLC v. Navarro*,
    579 U.S. 211 (2016)................................................................................. 21

*FCC v. Fox Television Stations, Inc.*,
    556 U.S. 502 (2009).................................................................................. 21

* *Federal Express Corp. v. United States Department of Commerce*,
    39 F.4th 756 (D.C. Cir. 2022).................................................................... 12, 13

*Ferreiro v. United States*,
    501 F.3d 1349 (Fed. Cir. 2007).................................................................. 7

*Fund for Animals v. Frizzell,*
    530 F.2d 982 (D.C. Cir. 1975) ........................................................................ 23

*Garcia v. Vilsack,*
    563 F.3d 519 (D.C. Cir. 2009) ........................................................................ 16

*Heckler v. Chaney,*
    470 U.S. 821 (1985) ........................................................................................ 14

*In re Aiken County,*
    725 F.3d 255 (D.C. Cir. 2013) ........................................................................ 17

*Ingersoll-Rand Co. v. United States,*
    780 F.2d 74 (D.C. Cir. 1985) .................................................................. 5, 6, 12

*Lincoln v. Vigil,*
    508 U.S. 182 (1993) .................................................................................. 16, 17

*Louisiana v. CDC,*
    603 F. Supp. 3d 406 (W.D. La. 2022) ............................................................ 15

*Lucas v. United States,*
    25 Cl. Ct. 298 (1992) ...................................................................................... 22

*Maine v. USDA,*
    No. 1:25-cv-00131-JAW, 2025 WL 1088946 (D. Me. Apr. 11, 2025) ............ 6

*Maryland Department of Human Resources v. HHS,*
    763 F.2d 1441 (D.C. Cir. 1985) ...................................................................... 6

* *Megapulse, Inc. v. Lewis,*
    672 F.2d 959 (D.C. Cir. 1982) ............................................................. 3, 4, 5, 7

*Middle East Broadcasting Networks, Inc. v. United States,*
    No. 25-5150, Order (D.C. Cir. May 28, 2025) ................................................. 3

*Milligan v. Pompeo,*
    502 F. Supp. 3d 302 (D.D.C. 2020) ................................................................ 15

*Missouri Health & Medicine Organization Inc. v. United States,*
    641 F.2d 870 (Ct. Cl. 1981) .............................................................................. 9

*Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Automobile Insurance Co.,*
    463 U.S. 29 (1983) .......................................................................................... 21

*Mylan Pharmaceuticals, Inc. v. Shalala*,
    81 F. Supp. 2d 30 (D.D.C. 2000) ............................................................ 23

*National Council of Nonprofits v. OMB*,
    No. 25-cv-239-LLA, 2025 WL 597959 (D.D.C. Feb. 25, 2025) ................... 25

*National Treasury Employees Union v. Trump*,
    No. 25-cv-0935-PLF, 2025 WL 1218044 (D.D.C. Apr. 28, 2025) ............... 11

*New York v. McMahon*,
    No. 25-cv-10601-MJJ, 2025 WL 146300923 (D. Mass. May 22, 2025) ........ 13

*NRDC Inc. v. Morton*,
    337 F. Supp. 167 (D.D.C. 1971) ............................................................. 25

*P.J.E.S. ex rel. Escobar Francisco v. Wolf*,
    502 F. Supp. 3d 492 (D.D.C. 2020) ......................................................... 25

*Pacito v. Trump*,
    No. 2:25-cv-255-JNW, 2025 WL 655075 (W.D. Wash. Feb. 28, 2025) ........ 18

*Perry Capital LLC v. Mnuchin*,
    864 F.3d 591 (D.C. Cir. 2017) ................................................................... 3

*Quiman, S.A. de C.V. v. United States*,
    39 Fed. Cl. 171 (1997) ............................................................................ 9

*Quiman, S.A. de C.V. v. United States*,
    No. 98-5036, 1999 WL 44182 (Fed. Cir. 1999) .......................................... 9

*Rhode Island v. Trump*,
    No. 1:25-cv-128-JJM-LDA, 2025 WL 1303868 (D.R.I. May 6, 2025) .............. 4, 7, 8, 18

*Saget v. Trump*,
    375 F. Supp. 3d 280 (E.D.N.Y. 2019) ...................................................... 15

*San Antonio Housing Authority v. United States*,
    143 Fed. Cl. 425 (2019) .......................................................................... 9

*Sharp v. Weinberger*,
    798 F.2d 1521 (D.C. Cir. 1986) ............................................................. 4, 7

*Southern Education Foundation v. United States Department of Education*,
    No. 25-cv-1079-PLF, 2025 WL 1453047 (D.D.C. May 21, 2025) .............. 4, 5, 8

*St. Bernard Parish Government v. United States*,
    134 Fed. Cl. 730 (2017) ..................................................................................... 9

*Thermalon Industries, Ltd. v. United States*,
    34 Fed. Cl. 411 (1995) ..................................................................................... 10

*Tootle v. Secretary of Navy*,
    446 F.3d 167 (D.C. Cir. 2006) ......................................................................... 7

*Train v. City of New York*,
    420 U.S. 35 (1975)................................................................................... 12, 18

\* *Transohio Savings Bank v. Director, Office of Thrift Supervision*,
    967 F.2d 598 (D.C. Cir. 1992) .................................................................. 3, 4, 7

*United States Conference of Catholic Bishops v. United States Department of State*,
    No. 1:25-cv-00465-TNM, 2025 WL 763738 (D.D.C. Mar. 11, 2025)............................ 7

*United Steel v. Mine Safety & Health Administration*,
    925 F.3d 1279 (D.C. Cir. 2019) ....................................................................... 24

*Widakuswara v. Lake*,
    No. 1:25-cv-1015-RCL, 2025 WL 1166400 (D.D.C. Apr. 22, 2025) ............................ 12

*Widakuswara v. Lake*,
    No. 25-5144, 2025 WL 1288817 (D.C. Cir. May 3, 2025) ................................. 3

*Youngstown Sheet & Tube Co. v. Sawyer*,
    343 U.S. 579 (1952)................................................................................... 13, 14

\* *Zivotofsky ex rel. Zivotofsky v. Kerry*,
    576 U.S. 1 (2015)..................................................................................... 14, 23

**Constitutional Provisions**

U.S. Constitution, Art. II, § 3............................................................................. 15

**Statutes and Legislative Material**

2 U.S.C. § 684.................................................................................................... 19

2 U.S.C. § 687.................................................................................................... 18

5 U.S.C. § 701(a)(2)........................................................................................... 16

5 U.S.C. § 702.............................................................................................. 2, 22

5 U.S.C. § 704 ................................................................................................................ 15

5 U.S.C. § 706(2) ............................................................................................................. 6

31 U.S.C. § 1513(b), (c) ................................................................................................. 20

31 U.S.C. § 6305 ............................................................................................................ 10

H.R. Rep. No. 93-658 (1973) ......................................................................................... 19

Pub. L. No. 116-113, 134 Stat. 98, 100 (Jan. 29, 2020) ............................................... 12

Pub. L. No. 118-47, 138 Stat. 628, 641 (Mar. 23, 2024) .............................................. 12

**Rules**

Federal Rule of Civil Procedure 65(c) ........................................................................... 24

**Regulations**

2 C.F.R. § 200.340 ........................................................................................................... 5

**Other Authorities**

Secretary Chavez-DeRemer (@SecretaryLCD), X (Mar. 26, 2025, 4:37 PM) ..................... 19, 20

U.S. Department of Labor (@USDOL), X (Apr. 1, 2025, 12:38 PM) ......................................... 20

U.S. Government Accountability Office, B-217722,
    64 Comp. Gen. 359 (Mar. 18, 1985) ................................................................................ 18

U.S. Government Accountability Office, B-337137
    (May 22, 2025) ..................................................................................................................... 18

* U.S. Government Accountability Office, GAO-16-464SP,
    Principles of Federal Appropriations Law (4th Ed. 2016) .................................... 17, 18, 19

* U.S. Government Accountability Office, GAO-06-382SP,
    Principles of Federal Appropriations Law (3d ed. Feb. 2006) ........................................ 20

# INTRODUCTION

For many years, Congress has appropriated funds for the Bureau of International Labor Affairs (ILAB) at the Department of Labor (DOL) to operate projects promoting workers' rights around the world. ILAB complies with Congress's directives through partnerships with nongovernmental organizations, including Plaintiffs. As explained in Plaintiffs' motion, Defendants recently abruptly canceled all funding for those projects—in violation of the appropriations statutes that authorized them, contrary to bedrock separation-of-powers principles, and inconsistent with the requirement of reasoned decision making established by the Administrative Procedure Act (APA).

Defendants' opposition reframes this case as a series of individual contract disputes between DOL and Plaintiffs. They first contend that, because ILAB operated its technical assistance projects through cooperative agreements, Plaintiffs can challenge Defendants' mass termination of all of ILAB's programing only through breach-of-contract claims brought in the Court of Federal Claims. As explained in Plaintiffs' opening memorandum and below, however, this Court has jurisdiction over Plaintiffs' claims, which seek to vacate Defendants' actions that are contrary to statutory obligations and constitutional separation-of-powers principles. Defendants also argue that Plaintiffs cannot succeed on the merits because, in Defendants' view, this case involves a routine exercise of discretion to allocate lump-sum appropriations—although the effect of Defendants' actions is a refusal to spend any of the funds that Congress appropriated to ILAB. But Plaintiffs have established that these actions are ultra vires and in violation of relevant appropriations statutes, the Impoundment Control Act, and the Anti-Deficiency Act.

Accordingly, Plaintiffs are entitled to summary judgment on those claims. In the alternative, because Plaintiffs are likely to prevail on their claim that Defendants acted arbitrarily and capriciously when terminating ILAB's cooperative agreements, Plaintiffs are entitled to a

preliminary injunction on that count. Withholding injunctive relief would cause irreparable harm to Plaintiffs, the work they have long performed to promote respect for labor rights around the world, and the public interest, including American labor and economic interests both abroad and at home. The Court should grant Plaintiffs' motion.

## ARGUMENT

### I.    This Court has jurisdiction over Plaintiffs' claims.

In terminating the cooperative agreements supporting ILAB's international technical assistance projects, Defendants are unlawfully refusing to spend the funds Congress appropriated for those programs. *See* Pls. Mem. 18–29. Seeking a jurisdictional barrier to this Court's resolution of Plaintiffs' claims, Defendants recast the complaint as a series of individual disputes over the terms and conditions of discrete cooperative agreements between DOL and Plaintiffs. Defendants' jurisdictional arguments, however, misconstrue both the nature of Plaintiffs' claims and the law governing this Court's jurisdiction.

### A.    The Court has jurisdiction over Plaintiffs' ultra vires claim.

To begin, the Tucker Act's jurisdictional bar is inapplicable to Plaintiffs' ultra vires claim for a reason ignored in Defendants' opposition. The Tucker Act precludes jurisdiction over certain contract claims against the federal government because it is a "statute that grants consent to suit," and therefore "expressly or impliedly forbids" APA relief, thus bringing such claims within the limitations that the APA places on its waiver of sovereign immunity, 5 U.S.C. § 702. *Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*, 38 F.4th 1099, 1106 (D.C. Cir. 2022). That APA waiver of sovereign immunity, however, is irrelevant to Plaintiffs' ultra vires claim. Where an officer has "acted in excess of his legal authority"—in other words, "is not doing business which the sovereign has empowered him to do"—"there is no sovereign immunity to waive" because "it never attached in the first place." *Chamber of Com. of U.S. v. Reich*, 74 F.3d 1322, 1329 (D.C. Cir. 1996) (internal

citations and quotation marks omitted). As a result, it makes little sense to ask whether the APA's waiver of sovereign immunity is available or impliedly barred by the Tucker Act for Plaintiffs' ultra vires claim. *See Widakuswara v. Lake*, No. 25-5144, 2025 WL 1288817, at *12 (D.C. Cir. May 3, 2025) (Pillard, J., dissenting from grant of stay pending appeal) ("Constitutional claims for injunctive or declaratory relief face no sovereign immunity bar, per the *Larson-Dugan* exception.").[1]

### B.    Neither the rights Plaintiffs assert nor the relief they request are contractual.

To determine whether a claim sounds in contract, and thus whether it belongs in the Court of Federal Claims under the Tucker Act, courts consider both "the source of the rights upon which the plaintiff bases its claims" and "the type of relief sought (or appropriate)." *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982); *Am. Bar Ass'n v. DOJ*, No. 25-cv-1263-CRC, 2025 WL 1388891, at *6 (D.D.C. May 14, 2025) (citing *Crowley*, 38 F.4th at 1110, and noting that the district court has jurisdiction unless both considerations support the defendants). In this suit, Plaintiffs neither assert contractual rights nor seek contractual remedies. *See* Pls. Mem. 11–17.

**1.** Defendants suggest that Plaintiffs' claims are essentially contractual because Plaintiffs' now-terminated cooperative agreements with DOL are what entitle them to ILAB funding. *See* Defs. Opp. 11—14. But "litigants may bring statutory and constitutional claims in federal district court even when the claims depend on the existence and terms of a contract with the government." *Transohio Sav. Bank v. Dir., Off. of Thrift Supervision*, 967 F.2d 598, 610 (D.C. Cir. 1992), *abrogation on other grounds recognized by Perry Capital LLC v. Mnuchin*, 864 F.3d 591, 620

---

[1] The D.C. Circuit has vacated the *Widakuswara* per curiam stay order discussed in Plaintiffs' opening brief, Pls. Mem. 17, and Defendants' opposition, Defs. Opp. 10. In so doing, the en banc court stated that the government had not established a "strong showing of a likelihood of success on the merits" of its jurisdictional argument for "substantially for the reasons explained by Judge Pillard." *Middle East Broad. Networks, Inc. v. United States*, No. 25-5150, Order at 2 (D.C. Cir. May 28, 2025).

(D.C. Cir. 2017). The D.C. Circuit, for example, has held that the Tucker Act does not bar a due process claim, "even though that claim rested necessarily on the premise that [the plaintiff's] contract with the government gave him a constitutionally protected property interest." *Id.* (discussing *Sharp v. Weinberger*, 798 F.2d 1521, 1523 (D.C. Cir. 1986)). The source-of-rights inquiry does not turn on whether plaintiffs have a contract with the government; it turns on whether the legal obligations they seek to enforce "sound[] genuinely in contract" or are "based on truly independent legal grounds." *Crowley*, 38 F.4th at 1107 (quoting *Megapulse*, 672 F.3d at 969–70).

Here, Plaintiffs seek to enforce obligations arising from statutes mandating that Defendants spend the money Congress appropriated to ILAB, constitutional separation-of-powers principles, and the APA. The sources of those rights are statutory and constitutional, not contractual. *See, e.g.*, *S. Educ. Found. v. U.S. Dep't of Educ.*, No. 25-cv-1079-PLF, __ F. Supp. 3d __, 2025 WL 1453047, at *7 (D.D.C. May 21, 2025) (holding that the source of the rights is not contractual where the plaintiff's "claims turn entirely on examining the federal statutes and regulations governing [its] grant award," not "the terms of the grant agreement"); *Climate United Fund v. Citibank, N.A.*, No. 25-cv-698-TSC, __ F. Supp. 3d __, 2025 WL 1131412, at *10 (D.D.C. Apr. 16, 2025) (holding that source of the rights was statutory and regulatory, not contractual, where plaintiffs claimed that the "suspension and termination of [their] grants interferes with Congress' mandate under the [statute] concerning desirable public policy"); *Rhode Island v. Trump*, No. 1:25-cv-128-JJM-LDA, __ F. Supp. 3d __, 2025 WL 1303868, at *6 (D.R.I. May 6, 2025) (appeal pending) (exercising jurisdiction where the plaintiffs' challenges, including to termination of grant agreements, were "grounded on whether the Defendants' actions exceeded the bounds of their *statutory* or *constitutional* authorities"). Thus here, where Plaintiffs are "[s]eeking to ensure compliance with statutory and regulatory commands"—including a command to operate a

government program through grants, cooperative agreements, or contracts—their claims present "a matter beyond the scope of the Tucker Act's exclusive jurisdiction." *Cmty. Legal Servs. in E. Palo Alto v. HHS*, __ F.4th __, No. 25-2808, 2025 WL 1393876, at *2 (9th Cir. May 14, 2025).

To be sure, the fact that DOL had entered cooperative agreements with Plaintiffs is relevant to the case in two ways. First, the relationships established by those agreements give Plaintiffs a concrete stake in Defendants' actions flouting Congress's commands. In other words, those agreements give Plaintiffs standing to challenge Defendants' violations of law. *See S. Educ. Found.*, 2025 WL 1453047, at *6. Second, Defendants cite the terms of the cooperative agreements as a defense to Plaintiffs' claims: They assert that, because those agreements gave DOL authority to terminate individual awards that "no longer effectuate[ ] the program goals or agency priorities," Defendants had authority to terminate every agreement in pursuit of an agency decision not to spend any of the funds Congress appropriated for this purpose. Defs. Opp. 12, 27 (citing Kodiak Decl., Ex. B at 2 & 2 C.F.R. § 200.340). Putting aside that the defense lacks merit, *see infra* at 21, it has no bearing on the jurisdictional question. As the D.C. Circuit has made clear, the "mere fact that a court may have to rule on a contract issue does not, by triggering some mystical metamorphosis, automatically transform an action ... into one on the contract and deprive the court of jurisdiction it might otherwise have." *Megapulse*, 672 F.2d at 968.

Contrary to Defendants' assertion, recognizing that the source of the rights here is statutory and constitutional rather than contractual does not "create a complete end-run around the exclusive jurisdiction of the Court of Federal Claims." *See* Defs. Opp. 13. Under well-established case law, the Tucker Act applies where "it is possible to conceive of [a] dispute as entirely contained within the terms of the contract"—even where a challenged "termination also arguably violates certain other regulations." *Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 78 (D.C. Cir. 1985). Such

5

contract disputes "are within the unique expertise of the Court of Claims" and belong in that forum. *Id.* (holding that a dispute over the scope of the termination clause in a procurement contract belonged in the Court of Federal Claims). By contrast, where, as here, "claims arise under a federal grant program and turn on the interpretation of statutes and regulations rather than on the interpretation of an agreement negotiated by the parties," *Maryland Dep't of Hum. Res. v. HHS*, 763 F.2d 1441, 1449 (D.C. Cir. 1985), those claims are not governed by the Tucker Act and are within the jurisdiction of the district court. *See Cmty. Legal Servs. in E. Palo Alto*, 2025 WL 1393876, at *2; *see also Bowen v. Massachusetts*, 487 U.S. 879, 908 (1988) ("It would be nothing less than remarkable to conclude that Congress intended judicial review of … complex" statutory and regulatory questions "in a specialized forum such as the Court of Claims."); *Maine v. USDA*, No. 1:25-cv-00131-JAW, __ F. Supp. 3d __, 2025 WL 1088946, at *19 n.8 (D. Me. Apr. 11, 2025) (observing that, if APA challenges to withholding of federal funds must be brought in the Court of Federal Claims, that court "will be charged with deciding issues decidedly outside its limited jurisdiction, a result that *Bowen* rejected.").

**2.** The remedies that Plaintiffs seek are likewise not contractual. Contrary to Defendants' characterization of the relief requested, Plaintiffs do not seek "specific performance" of cooperative agreements. Defs. Opp. 11–12. Rather, their complaint asks the Court to declare that Defendants' wholesale termination of ILAB's statutorily mandated grant and cooperative agreements is unlawful and to vacate the actions that Defendants have taken to effectuate that wholesale termination of a congressionally required program. *See* Compl. 24. This kind of relief "is afforded—indeed, *required*—by and routinely granted under the APA." *AIDS Vaccine Advoc. Coal. v. U.S. Dep't of State*, No. 25-cv-00400-AHA, __ F. Supp. 3d __, 2025 WL 752378, at *8 (D.D.C. Mar. 10, 2025) (appeal pending); *see* 5 U.S.C. § 706(2) (providing that courts "shall …

hold unlawful and set aside agency action" that violates the APA's substantive standards).

For that reason, courts considering similar challenges to unlawful agency impoundments have concluded that an order granting "equitable relief vindicating [plaintiffs'] rights to access their grant funds and to enjoin" an agency's "unlawful suspension and termination of their grants" would not be an order for specific performance of the agreements. *Climate United Fund*, 2025 WL 1131412, at *10; *see also, e.g.*, *Rhode Island*, 2025 WL 1303868, at *6. And any money that flowed to Plaintiffs should this Court vacate or set aside Defendants' unlawful termination of all ILAB cooperative agreements would not result from an order of specific performance, but instead "from the structure of statutory and regulatory requirements" governing Plaintiffs' claims. *Tootle v. Sec'y of Navy*, 446 F.3d 167, 175 (D.C. Cir. 2006). Federal district courts are the appropriate place to seek the remedy that Plaintiffs request here: "an injunction … to vacate the unlawful terminations of grant money under the APA to access federal funds that were already appropriated." *Colorado v. HHS*, No. 1:25-cv-00121-MSM-LDA, 2025 WL 1426226, at *9 (D.R.I. May 16, 2025); *see also Ferreiro v. United States*, 501 F.3d 1349, 1353 n.3 (Fed. Cir. 2007) ("An order compelling the government to follow its regulations is equitable in nature and is beyond the jurisdiction of the Court of Federal Claims.").

In any event, under established law "a federal district court may accept jurisdiction over a statutory or constitutional claim for injunctive relief even where the relief sought is an order forcing the government to obey the terms of a contract—that is, specific performance." *Transohio Sav. Bank*, 967 F.2d at 610 (citing *Sharp*, 798 F.2d at 1523). And district courts are not "forbidden from granting injunctive relief merely because that relief might be the equivalent of ordering specific performance of a government contract." *Id.* at 611 (citing *Megapulse*, 672 F.3d at 971); *see Bowen*, 487 U.S. at 910 (holding that an order "for specific relief" to "undo the Secretary's

refusal to reimburse the State" is "within the District Court's jurisdiction under [the APA's] waiver of sovereign immunity"). The district court case on which Defendants rely, *U.S. Conference of Catholic Bishops v. U.S. Department of State*, No. 1:25-cv-00465-TNM, __ F. Supp. 3d __, 2025 WL 763738 (D.D.C. Mar. 11, 2025) (appeal pending), does not outweigh the well-established appellate precedent indicating that the relief sought here is not contractual for Tucker Act purposes.

**3.** Plaintiffs' opening memorandum addressed the brief per curiam order granting a stay of an injunction in *Department of Education v. California*, 145 S. Ct. 966 (2025), *see* Pls. Mem. 15–16, which, the parties agree, recognized that "the Tucker Act grants the Court of Federal Claims jurisdiction over suits based on any express or implied contract with the United States." Defs. Opp. 10 (quoting *California*, 145 S. Ct. at 968). As Plaintiffs have explained, because the claims here are based on statutory and constitutional principles, not the terms of any DOL cooperative agreements, this case is more like *Department of State v. AIDS Vaccine Advocacy Coalition*, 145 S. Ct. 753 (2025), in which the Supreme Court declined to stay an injunction requiring the payment of statutorily mandated funds. In response, Defendants offer the bare assertion that *California* is "more recent and controlling." Defs. Opp. 10 n.2. In fact, neither decision is "controlling" because neither changed the law governing Tucker Act jurisdiction. And even in the weeks since Plaintiffs filed their motion, several courts have found that, notwithstanding *California*, plaintiffs may challenge the unlawful termination or modification of government funding programs in district court where their claims are statutory or constitutional, not based on the terms of an underlying agreement. *See, e.g.*, *S. Educ. Found.*, 2025 WL 1453047, at *8–9; *Rhode Island*, 2025 WL 1303868, at *6; *Colorado*, 2025 WL 1426226, at *9.

**C.    The Court of Federal Claims lacks jurisdiction over Plaintiffs' claims**.

As Plaintiffs explained in their opening memorandum, the Tucker Act does not apply for the additional reason that Plaintiffs' claims do not concern contracts supported by adequate

consideration, as necessary for the Court of Federal Claims to exercise jurisdiction. *See* Pls. Mem. 13–15. Defendants argue otherwise, primarily on the ground that the international labor rights programs that Plaintiffs operated with the support of funding from ILAB cooperative agreements served the interest of the U.S. government through its relationship with trade partners. And Plaintiffs agree that the international technical assistance programing ILAB funded, including the projects Plaintiffs operated, supported U.S. labor and economic interests both abroad and at home. That is why Congress consistently chose to fund ILAB cooperative agreements, and why (among other reasons) Defendant's abrupt decision to cancel them was arbitrary and capricious. For purposes of consideration, however, courts look for the presence of a "direct, tangible benefit[ ]," not to abstract interests or policy goals. *St. Bernard Par. Gov't v. United States*, 134 Fed. Cl. 730, 736 (2017), *aff'd on other grounds*, 916 F.3d 987 (Fed. Cir. 2019).

Although Defendants cite a handful of cases disagreeing with the approach laid out in *St. Bernard Parish*, those cases do not establish that *St. Bernard Parish* misstates the law or that some other rule would govern in the Court of Federal Claims. Rather, those cases recognize that "cooperative agreements are not *categorically* excluded from [the Court of Federal Claims'] jurisdiction." *San Antonio Hous. Auth. v. United States*, 143 Fed. Cl. 425, 463 (2019) (emphasis added). That recognition makes sense because, in some situations, the government receives substantial consideration from relationships established via cooperative agreements. For instance, in *Quiman, S.A. de C.V. v. United States*, No. 98-5036, 1999 WL 44182 (Fed. Cir. 1999), on which Defendants rely, the agreement required the plaintiffs to immediately pay $15,000 to the U.S. Treasury as a condition of participating in an inspection program. *See Quiman, S.A. de C.V. v. United States*, 39 Fed. Cl. 171, 174 (1997).[2] By contrast, in many other instances, cooperative

---

[2] Other decisions cited by Defendants, Defs. Opp. 17–18, are of little persuasive value because

agreements are not contracts subject to jurisdiction in the Court of Federal Claims because the government is directed by statute to use those instruments for "the principal purpose of … transfer[ing] a thing of value to the … recipient to carry out a public purpose." 31 U.S.C. § 6305.

Defendants scrounge for concrete and direct benefits to the government in the generic terms that govern DOL cooperative agreements. First, they flag terms requiring grant recipients to "buy" and "fly" American. *See* Defs. Opp. 16. From these terms, Defendants claim only an attenuated benefit, positing that Plaintiffs "buying and flying American" on their projects "would" produce "federal taxes paid on such products or airfares, as well as increasing the revenue of U.S. businesses in ways that *may* further increase revenues to the Government." *Id.* (emphasis added). Defendants fail to identify what sort of federal taxes would be paid on product purchases, and they notably use only vague and conditional language. Speculation that grantees' purchase of American goods and services might have a positive impact on the domestic economy, thereby increasing government revenues, is not a "direct" benefit that Plaintiffs have contractually undertaken to provide. Second, briefly suggesting that certain terms governing intellectual property rights qualify as consideration, *see id.*, Defendants rely on a case where the Court of Federal Claims recognized that "a royalty-free license" gave the government a specific benefit, *see Thermalon Indus., Ltd. v. United States*, 34 Fed. Cl. 411, 415 (1995). There, however, the agreement at issue governed a National Science Foundation (NSF) award for high-technology research into thermal insulation for clothing, and the license "had significant economic value" insulating the NSF from patent suits. *Id.* Defendants do not identify, or even suggest, any significant value in intellectual property attributable to Plaintiffs' agreements.

---

they do not address whether the agreement was supported by consideration. *See, e.g.*, *City of Wheeling, W.Va. v. United States*, 20 Cl. Ct. 659, 665 (1990); *Missouri Health & Med. Org., Inc. v. United States*, 641 F.2d 870, 873 (Ct. Cl. 1981).

II.   **Plaintiffs are entitled to summary judgment on their ultra vires and APA contrary-to-law claims and are likely to succeed on their arbitrary and capricious claim.**[3]

    A.   **Because Defendants acted without lawful authority, this Court should issue relief to undo their unlawful actions.**

        1.   **An ultra vires claim is available.**

"When an executive acts *ultra vires*, courts are normally available to reestablish the limits on his authority." *Chamber of Com.*, 74 F.3d at 1328 (quoting *Dart v. United States*, 848 F.2d 217, 224 (D.C. Cir. 1988)); *Nat'l Treasury Emps. Union v. Trump*, No. 25-cv-0935-PLF, 2025 WL 1218044, at *12 (D.D.C. Apr. 28, 2025) (appeal pending). Consistent with that authority, Count I seeks relief for Defendants' unlawful actions flouting ILAB's appropriations statutes, in violation of constitutional separation-of-powers principles. Rather than defend the lawfulness of their actions, Defendants make three arguments as to why this Court should not consider the claim at all. None succeed.

First, Defendants contend that Plaintiffs' ultra vires claim is little more than a "workaround" to avoid the Tucker Act limitation on jurisdiction. *See* Defs. Opp. 19. "The ability to sue to enjoin unconstitutional actions by state and federal officers is the creation of courts of equity," however, "and reflects a long history of judicial review of illegal executive action, tracing back to England." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015). Plaintiffs can invoke that tradition here because Defendants have acted without any statutory or constitutional authority to terminate all ILAB projects. In fact, Defendants' mass termination of ILAB cooperative agreements directly defied Congress's mandate that ILAB "shall" spend its

---

[3] Pursuant to its May 12, 2025, minute order, the Court will treat Plaintiffs' motion for a preliminary injunction, ECF No. 9, as a motion for summary judgment on Counts I through IV of Plaintiffs' complaint. Should the Court decide that summary judgment is appropriate for Plaintiffs on any of these claims, the Court would not need to resolve Plaintiffs' arbitrary and capricious claim to enter final judgment on the merits for Plaintiffs.

appropriated funds on projects combating child labor and promoting workers' rights in trade-partner countries, *see, e.g.*, Department of Labor Appropriations Act, 2024, Pub. L. No. 118-47, 138 Stat. 628, 641 (Mar. 23, 2024), and that it "shall … use[]" other appropriated funds "to support reforms of the labor justice system in Mexico," USMCA Supplemental Appropriations Act, Pub. L. No. 116-113, 134 Stat. 98, 100 (Jan. 29, 2020). "Defendants' unwillingness to expend funds in accordance with the congressional appropriations laws is a direct affront to the power of the legislative branch." *Widakuswara v. Lake*, No. 1:25-cv-1015-RCL, 2025 WL 1166400, at *15 (D.D.C. Apr. 22, 2025) (appeal pending). This Court has inherent authority to intervene to stop that wrongdoing. *See Train v. City of New York*, 420 U.S. 35, 42 (1975) (affirming holding for plaintiffs alleging impoundment of appropriated funds).

While Defendants suggest otherwise, granting Plaintiffs summary judgment on their ultra vires claim would not suggest that government contract disputes may properly be pleaded as freestanding ultra vires claims to evade the Court of Federal Claims' jurisdiction. Plaintiffs raising ultra vires claims must show that the challenged agency action went "beyond mere legal or factual error and amount[ed] to a clear departure by the [agency] from its statutory mandate" or constituted "blatantly lawless agency action." *Fed. Express Corp. v. U.S. Dep't of Com.*, 39 F.4th 756, 764 (D.C. Cir. 2022) (internal quotation marks omitted). An unhappy contractor seeking to clarify and enforce the requirements of federal procurement regulations, *e.g.*, *Ingersoll-Rand*, 780 F.2d at 77, would not satisfy that standard. Plaintiffs, however, do not allege such "[g]arden-variety error[]" of law or fact." *Fed. Express Corp.*, 39 F.4th at 764. Rather, they allege that the executive has willfully defied its statutory mandate to support international workers' rights projects via ILAB.

Second, relying primarily on *Dalton v. Specter*, 511 U.S. 462 (1994), Defendants contend that Plaintiffs' ultra vires claim is no more than a repackaging of their arguments that Defendants

12

violated various statutes and, therefore, is not a proper constitutional claim. *See* Defs. Opp. 20. In *Dalton*, the Supreme Court explained that not "every claim alleging that the President exceeded his statutory authority" should be "considered a constitutional claim." *Dalton*, 511 U.S. at 474. The Court did not, however, question the availability of a nonstatutory claim based on acts allegedly in violation of the Constitution. *Id*. In particular, the Court reaffirmed the longstanding principle, established in *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952), that a claim is available where plaintiffs allege that the executive acted in the "*absence* of *any* statutory authority." *Dalton*, 511 U.S. at 473. Here, Plaintiffs allege that Defendants acted in the absence of any statutory authority—and, indeed, in direct defiance of contrary statutory authority—when they canceled all ILAB programs. That is a viable ultra vires claim. *See Chi. Women in Trades v. Trump*, No. 25-cv-2005, 2025 WL 1331743, at *4–5 (N.D. Ill. May 7, 2025).

Finally, Defendants suggest that Count I fails because the actions they challenge are not a sufficiently "extreme agency error where the agency has stepped so plainly beyond the bounds of its statutory authority, or acted so clearly in defiance of it, as to warrant the immediate intervention of an equity court." *Fed. Express Corp.*, 39 F.4th at 763 (alterations and internal quotation marks omitted). On this, the parties simply disagree about the scope of the wrongdoing. While Defendants frame the case as concerning a series of discrete contract disputes, they "have not made it a secret that their goal is to do away" with all of ILAB's statutorily mandated and congressionally appropriated funding, *New York v. McMahon*, No. 25-cv-10601-MJJ, __ F. Supp. 3d __, 2025 WL 1463009, at *23 (D. Mass. May 22, 2025) (appeal pending). *See* Pls. Mem. 7–8, 20. "These actions are plainly beyond the bounds of what Defendants can do, and Defendants do not point to any authority to the contrary." *New York*, 2025 WL 1463009, at *23. The Court should grant summary judgment to Plaintiffs on Count I.

2.      **This Court's intervention would solve, not create, a separation-of-powers problem.**

In Defendants' view, any order remedying their unlawful usurpation of Congress's appropriations power would create its own separation-of-powers problem by intruding on the Executive Branch's authority over foreign affairs. *See* Defs. Opp. 21–23. As Defendants themselves recognize, though, the Supreme Court has rejected the notion that the President enjoys "unbounded power" in the realm of foreign affairs. *Zivotofsky ex rel. Zivotofsky v. Kerry*, 576 U.S. 1, 20 (2015). And the Supreme Court has cautioned that "it is essential the congressional role in foreign affairs be understood and respected." *Id*. at 21. Accordingly, although "in foreign affairs the President has a degree of independent authority to act," Defs. Opp. 22 (quoting *Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 414 (2003)), that uncontroversial proposition does not resolve the constitutionality of executive action that runs headlong into Congress's own constitutional prerogative to legislate on matters that touch on foreign affairs. *See Zivotofsky*, 576 U.S. at 16 ("In foreign affairs, as in the domestic realm, the Constitution 'enjoins upon its branches separateness but interdependence, autonomy but reciprocity.'" (quoting *Youngstown*, 343 U.S. at 635 (Jackson, J., concurring))). Congress here instructed ILAB to spend funds on international workers' rights programs, *see* Pls. Mem. 3–4 (discussing statutes), and this Court can enforce that command.

For that reason, Defendants' unelaborated *cf.* cite to *Heckler v. Chaney*, 470 U.S. 821 (1985), does them little good. While *Heckler* held that the APA does not authorize review of an executive decision whether to take enforcement action where the relevant statute (enacted by Congress and signed by the President) commits that decision to the executive's discretion, *id*. at 830, the statutes here afford the executive no discretion to categorically withhold ILAB funds. Where, as here, duly enacted legislation lawfully requires the executive to take specified action,

the executive's role is to "take Care" that the legislation is "faithfully" carried out, irrespective of whether it touches on foreign affairs. *See* U.S. Const., art. II, § 3.

Given this constitutional backdrop, Defendants' suggestion that an injunction would "create a grave separation-of-powers problem" by requiring the Court to "supervise ILAB's foreign assistance grants," Defs. Opp. 22, falls flat. Plaintiffs do not ask for ongoing supervision of ILAB programming or any judicial intervention into *how* the executive carries out Congress's mandate to administer ILAB grants; rather, they ask this Court to set aside the executive's unlawful decision not to comply with that mandate at all. And where the executive has acted unlawfully, injunctions of executive actions that implicate foreign affairs are not unusual. *See, e.g.*, *Louisiana v. CDC*, 603 F. Supp. 3d 406, 412, 441 (W.D. La. 2022) (preliminarily enjoining the executive from terminating COVID-related immigration restrictions); *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 308 (D.D.C. 2020) (preliminarily enjoining the executive from suspending the issuance of certain visas); *Saget v. Trump*, 375 F. Supp. 3d 280, 295 (E.D.N.Y. 2019) (preliminarily enjoining the termination of Temporary Protected Status for Haitian nationals lawfully residing in the United States); *Doe v. Trump*, 288 F. Supp. 3d 1045, 1054–55 (W.D. Wash. 2017) (preliminarily enjoining implementation of two Executive Orders concerning refugee admissions).

## B. Defendants' actions violated the relevant appropriations statutes, the Impoundment Control Act, and the Anti-Deficiency Act.

The Court should also grant summary judgment to Plaintiffs on their claims under the APA that Defendants acted contrary to law, including the relevant ILAB appropriations statutes and the Impoundment Control and Anti-Deficiency Acts.

### 1. Plaintiffs can bring their claims under the APA.

Defendants assert that the adequate-remedy bar of 5 U.S.C. § 704 precludes Plaintiffs' claims for relief under the APA. Neither of the alternative remedies Defendants propose, however,

would provide "relief of the same genre." *Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009) (internal quotation marks omitted). First, Defendants assert that a contract claim in the Court of Federal Claims would be an adequate alternative remedy. Defs. Opp. 24. Again though, review in the Court of Federal Claims is unavailable, Pls. Mem. 13–14; *supra* at 8–10, and in any event would not offer Plaintiffs the forward-looking, equitable relief they seek for Defendants' constitutional and statutory—not contractual—violations, Pls. Mem. 14–15. The "doubtful and limited relief available in the Claims Court is" therefore "not an adequate substitute for review in the District Court." *Bowen*, 487 U.S. at 901. Second, Defendants suggest, without elaboration, that enforcement of the Impoundment Control Act by the Comptroller General would be an adequate alternative remedy. Defs. Opp. 24. While they do not explain the point, they later address the role of the Comptroller General not to suggest that this official can vindicate Plaintiffs' rights—but to argue that Plaintiffs have *no* remedy, much less an "adequate" one. *See id.* at 27.

Defendants fare no better in arguing that the terminations of the ILAB cooperative agreements are unreviewable because they are "committed to agency discretion." *See id.* at 24–25 (citing 5 U.S.C. § 701(a)(2)). "[T]o honor the presumption of judicial review," the Supreme Court has "read the § 701(a)(2) exception for action committed to agency discretion quite narrowly, restricting it to those rare circumstances where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Dep't of Com. v. New York*, 588 U.S. 752, 772 (2019) (internal quotation marks omitted). Although Defendants are correct that "how to allot appropriated funds among competing priorities and recipients … is classic discretionary agency action," Defs. Opp. 24 (citing *Lincoln v. Vigil*, 508 U.S. 182, 193 (1993)), *whether* to allocate appropriated funds is not. Rather, the executive has *no* "authority to refuse to spend … funds" appropriated by statute, regardless of any "policy reasons

… for wanting to spend less than the full amount appropriated by Congress for a particular project or program." *In re Aiken Cnty.*, 725 F.3d 255, 261 n.1 (D.C. Cir. 2013). Thus, "[w]here Congress establishes a mandatory program, in the sense that 'Congress directs (rather than merely authorizes) the agency to conduct' certain activities, the rule in *Lincoln* has no application." *Cmty. Legal Servs. in E. Palo Alto*, 2025 WL 1393876, at *4 (quoting U.S. Gov't Accountability Off. (GAO), GAO-16-464SP, Principles of Federal Appropriations Law 2-37 & n.40 (4th Ed. 2016) (GAO Redbook)); *see also Colorado*, 2025 WL 1426226, at *11 (reasoning that whether an agency had "authority to eliminate … Congressionally appropriated funds" based on its own policy preference "is certainly not a question about agency discretion"); *Chi. Women in Trades*, 2025 WL 1331743, at *4–5 (recognizing that agency had no "discretionary power" to cancel agreements as a means of withholding appropriated funds). As Defendants recognize, "an agency is not free simply to disregard statutory responsibilities." Defs. Opp. 25 (quoting *Lincoln*, 508 U.S. at 193). That is precisely what Defendants did when they terminated all ILAB cooperative agreements, guaranteeing that the money would not be spent on the priorities Congress laid out.

### 2.    Defendants acted contrary to law.

**a.** Plaintiffs are entitled to summary judgment on their claim that Defendants acted contrary to the ILAB appropriations statutes. *See* Pls. Mem. 18–20. Defendants contend that Plaintiffs could succeed on such a claim only if a statutory directive specified Plaintiffs as intended recipients of ILAB funds. *See* Defs. Opp. 26. But they cite only *Lincoln*, where a litigant tried to challenge the agency's decision of *how*, not *whether*, to spend appropriated funds. Here, Defendants do not contest that they do not intend to spend the money Congress appropriated.

**b.** With respect to Plaintiffs' APA claim for violation of the Impoundment Control Act, Defendants first argue that judicial enforcement of the Act is limited to suit by the Comptroller

General, who is authorized to bring an enforcement action if a "budget authority is not made available for obligation," 2 U.S.C. § 687. *See* Defs. Opp. 27. But nothing in the Act suggests that the Comptroller General's ability to enforce the law precludes judicial review. This silence is particularly telling because a case challenging an impoundment was pending before the U.S. Supreme Court at the time the Act was passed, *see Train*, 420 U.S. 35, yet Congress said nothing to suggest that the Act would bar such cases in the future. *See also City of New Haven v. United States*, 809 F.2d 900, 901 (D.C. Cir. 1987) (considering private action, brought after enactment of the Impoundment Control Act, challenging validity of impoundments).[4]

In Defendants' view, they also have not impounded funds because they previously obligated them by entering into cooperative agreements, although they now have canceled the agreements and refuse to spend the money that Congress directed them to spend. No court has embraced this theory of impoundment, and rightly so. As the U.S. General Accountability Office (GAO)—the arm of Congress tasked with, among other things, supporting Congress's exercise of its constitutional power of the purse—has explained, "an impoundment is an action or inaction by an officer or employee of the United States that precludes the obligation *or expenditure* of budget authority provided by the Congress." GAO, B-217722, 64 Comp. Gen. 359 (Mar. 18, 1985)[5] (emphasis added). Indeed, GAO reiterated the point just last week. *See* GAO, B-337137 (May 22, 2025) ("An impoundment occurs when an agency refuses to spend budget authority.").[6]

---

[4] Although Defendants cite a few district court cases to support their contention, other courts have allowed plaintiffs to challenge impoundments. *See, e.g.*, *Rhode Island*, 2025 WL 1303868, at *13; *City & Cnty. of San Francisco v. Trump*, No. 25-cv-01350-WHO, 2025 WL 1282637, at *37 (N.D. Cal. May 3, 2025); *AIDS Vaccine Advoc. Coal.*, 2025 WL 752378, at *17 n.17; *Pacito v. Trump*, No. 2:25-cv-255-JNW, 2025 WL 655075, at *18 n.6 (W.D. Wash. Feb. 28, 2025) (appeal pending).

[5] https://www.gao.gov/products/b-217722.

[6] https://www.gao.gov/assets/880/877916.pdf.

The Act's distinction between deferrals and recissions reinforces this conclusion. A deferral—or a delay of any requirement to obligate or expend funds—can extend only through "the end of the fiscal year." 2 U.S.C. § 684. If any request to delay obligation or expenditure would mean that "'funds could be expected with reasonable certainty to lapse before they could be obligated, or would have to be obligated imprudently to avoid that consequence,'" that request would be treated as a "*de facto* rescission." GAO Redbook 2-49 (quoting 54 Comp. Gen. 453, 462 (1974)). These provisions bely the contention that government officials can circumvent the requirements of the Act by obligating appropriated funds with their fingers crossed behind their backs and then refusing to spend the funds by canceling agreements. That outcome would be a nonsensical reading of the Act and would run counter to its purpose of "restor[ing] responsibility for the spending policy of the United States to the legislative branch." H.R. Rep. No. 93-658, *reprinted in* 1974 U.S.C.C.A.N. 3462, 3463.

Moreover, holding Defendants' actions unlawful would not undermine Defendants' authority to manage ILAB projects, including by canceling individual cooperative agreements where appropriate under the terms of those agreements and relevant regulations. As GAO has recognized, intent matters: "The expiration of budget authority or delays in obligating it resulting from ineffective or unwise program administration are not regarded as impoundments unless accompanied by or derived from an intention to withhold the budget authority." GAO Redbook 2-50. Here, Defendants' intent is clear: They terminated all ongoing projects and announced that the reason for doing so was to withhold funds from a congressionally mandated program that they do not favor. *See* Secretary Chavez-DeRemer (@SecretaryLCD), X (Mar. 26, 2025, 4:37 PM)[7] (reposting list of canceled ILAB grants and claiming that "[t]he era of Americans' tax dollars

---

[7] https://x.com/SecretaryLCD/status/1904996097329594713.

bankrolling foreign handouts for things like 'Improving Gender Equity in the Mexican Workplace' is over"). That is an impoundment.

**c.** Plaintiffs are also entitled to summary judgment on their APA claim that Defendants acted contrary to the Anti-Deficiency Act. On this claim, Defendants largely argue that they did not and cannot have created any unauthorized reserve because only the Office of Management and Budget (OMB) can create a reserve. *See* Defs. Opp. 29. The statute, however, designates a role for the heads of executive agencies in apportioning funds among organizational units and reporting to the President on apportionment. *See* 31 U.S.C. § 1513(b), (c); *see also* GAO Redbook, GAO-06-382SP, 6-128 (3d ed. Feb. 2006) ("Although primary responsibility for a violation of section 1512 lies with the Director of OMB, the head of the agency concerned also may be found responsible if he or she fails to send the Director accurate information on which to base an apportionment."). Here, Defendants have conceded that they have created an unauthorized reserve, boasting that they were "saving" millions of dollars by canceling ILAB cooperative agreements. *See* U.S. Dep't of Labor (@USDOL), X (Apr. 1, 2025, 12:38 PM)[8] (official DOL account sharing DOGE post touting the "$237M in savings" from canceling ILAB's "'America Last' grants"); Secretary Chavez-DeRemer (@SecretaryLCD), X (Mar. 26, 2025, 4:37 PM)[9] (reposting the same on Defendant Chavez-DeRemer's official account and commenting "[w]e just saved $237M").[10] They are not insulated from liability for creating an unlawful reserve just because they did so without justification *and* without going through the required procedures via OMB.

---

[8] https://x.com/USDOL/status/1907110344977236094.

[9] https://x.com/SecretaryLCD/status/1904996097329594713.

[10] Defendants fault Plaintiffs for relying on what they call a "solitary social media post by a government office outside of both OMB and DOL," presumably referring to the underlying DOGE post on X. *See* Defs. Opp. 29. But both Defendants reiterated the same message in their own posts. Moreover, Defendants have canceled *every* ILAB project and have produced no evidence of redirecting the unspent money to otherwise fulfill Congress's mandates.

### C. Defendants acted arbitrarily and capriciously.

Finally, Plaintiffs are entitled to a preliminary injunction on their arbitrary and capricious claim. Defendants offered no reasoned explanation for their decision to cancel all of ILAB's cooperative agreements, and the record at this stage makes clear that they did so without considering relevant factors, including the significant reliance interests at stake. *See* Pls. Mem. 22–27. Defendants argue only that, under the terms of the governing agreements, DOL was entitled to cancel individual awards for policy reasons. *See* Defs. Opp. 29–30. But an agency cannot use arbitrary and capricious means to effectuate policy. *See DHS v. Regents of the Univ. of Calif.*, 591 U.S. 1, 24–33 (2020) (determining that agency's method of pursuing policy change was arbitrary and capricious). Moreover, Defendants' bare invocation of "agency priorities" in their termination notices does not articulate "a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). And although an agency may change its policies, "[i]n explaining its changed position, an agency must … be cognizant that longstanding policies may have 'engendered serious reliance interests that must be taken into account.'" *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221–22 (2016) (quoting *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009)). Defendants do not suggest that they did so. "[W]here the agency has failed to provide even a minimal level of analysis, its action is arbitrary and capricious and so cannot carry the force of law." *Id.* at 221. Defendants failed to do so here.

## III. Plaintiffs have established an entitlement to the requested preliminary and final relief.

To avert substantial harm caused by Defendants' violation of law, Plaintiffs are entitled to injunctive relief—a permanent injunction for Counts I through IV, or, in the alternative, a preliminary injunction.

A.     **Plaintiffs are suffering harm that cannot be remedied at law.**

Defendants do not dispute that the cancellation of all ILAB cooperative agreements has forced Plaintiffs to abandon much of their work on labor rights around the globe and caused substantial damage to Plaintiffs, which have been forced to lay off staff and renege on contracts with NGO partners. Defendants' primary response is that the harm they caused is only economic and can be repaired after the fact—in their view, through suits asking for damages based on the original agreements in the Court of Federal Claims. *See* Defs. Opp 30–33. To the extent that response is a rehashing of Defendants' jurisdictional argument, the Court should reject it for the reasons laid out above. *See supra* at 2–10. Moreover, much of Defendants' discussion of the harm to Plaintiffs *before* final judgment will be irrelevant if the Court grants summary judgment to Plaintiffs on any of Counts I through IV, because Defendants do not dispute that, if the terminations are not vacated at final judgment, Plaintiffs will not be able to continue any of the projects that ILAB previously supported.

Besides, Defendants are simply wrong that much of the injury Plaintiffs are suffering right now could be fully redressed later. For example, Plaintiffs have suffered non-compensable reputational harm as a direct result of the loss of funding because, without funding from DOL, they have no way to maintain their commitments to workers and partner organizations. *See Lucas v. United States*, 25 Cl. Ct. 298, 310 (1992) (stating that "[l]oss of business reputation is not a compensable damage claim in the Claims Court"); 5 U.S.C. § 702 (waiving sovereign immunity for unlawful agency action only for claims "other than money damages"). Plaintiffs have also described harms including the shuttering of the funded programs, which has made it more difficult for Plaintiffs to pursue their missions, and a consequent loss of staff expertise and relationships, both of which will be increasingly difficult to replace as time passes. *See* Bader-Blau Decl. ¶ 24;

Seidenfeld Decl. ¶ 21. That harm, too, will be neither compensable through damages nor fully reparable by a later judgment undoing Defendants' unlawful termination of Plaintiffs' agreements.

The suggestion that Plaintiffs are not entitled to injunctive relief because they waited too long to file suit is meritless. Plaintiffs filed a complaint just two-and-a-half weeks after the scope of Defendants' unlawful terminations became clear, and they moved for a preliminary injunction shortly thereafter. The cases that Defendants cite, Defs. Opp. 33, are inapposite, concerning either substantially longer delays or litigants that waited until well after passage of a key date. *See, e.g.*, *Mylan Pharms., Inc. v. Shalala*, 81 F. Supp. 2d 30, 44 (D.D.C. 2000) (addressing delay of several months); *Fund for Animals v. Frizzell*, 530 F.2d 982, 987 (D.C. Cir. 1975) (faulting plaintiffs challenging length of comment period for waiting until after regulation was issued).

### B. The balance of equities and public interest support relief.

There is no dispute that Defendants' termination of every ILAB cooperative agreement has led to the shuttering of important projects combating forced and child labor and promoting labor rights globally. *See* Pls. Mem. 32. Defendants nevertheless assert that the Court should not undo those terminations because "[t]he public has an interest in ensuring that tax dollars are not spent towards foreign projects that are inconsistent with American interests." Defs. Opp. 33. Missing from Defendants' calculation of the public interest is any recognition of Congress's constitutional role in determining how tax dollars are spent. Here, Congress determined that the appropriated funds should be spent on ILAB's workers' rights projects. Defendants acted contrary to, not in accordance with, the discretion afforded them in the relevant statutes to operate such programs. Although Defendants assert that the public has an interest in allowing the Executive Branch to address questions of foreign affairs, "[t]he Executive is not free from the ordinary controls and checks of Congress merely because foreign affairs are at issue." *Zivotofsky*, 576 U.S. at 21.

23

### C.  The scope of relief requested is appropriate to remedy the violations of law.

Plaintiffs' requested remedy is appropriately tailored to the nature of Defendants' unlawful action. Defendants ask to limit relief to restoring Plaintiffs' cooperative agreements. *See* Defs. Opp. 35–36. However, "the scope of injunctive relief is dictated by the extent of the violation established." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). Plaintiffs challenge the programmatic decision to discontinue all ILAB projects in contravention of appropriations law and without valid explanation. Their requested relief—an order declaring that decision unlawful and vacating the terminations taken pursuant to it —is appropriate because, where executive action is unlawful, the usual remedy is to enjoin it. *See United Steel v. Mine Safety & Health Admin.*, 925 F.3d 1279, 1287 (D.C. Cir. 2019) ("The ordinary practice is to vacate unlawful agency action."); *Regents*, 591 U.S. at 9 (holding that the rescission of a federal program "must be vacated" under the APA). That kind of relief is particularly necessary here, as Defendants' refusal to comply with Congress's commands to fund ILAB projects can be effectively remedied only by forcing them to restore the projects they canceled en masse. *See Cmty. Legal Servs. in E. Palo Alto v. HHS*, No. 25-cv-02847-AMO, __ F. Supp. 3d __ 2025 WL 1233674, at *13 (N.D. Cal. Apr. 29, 2025) (appeal filed); *cf. District of Columbia v. USDA*, 444 F. Supp. 3d 1, 49 (D.D.C. 2020) (Howell, J.) ("[W]hen a plaintiff proves that a rule was unlawfully promulgated, halting the rule's application to the plaintiff may lessen the real-world impact of the unlawful rule on the plaintiff but does not fully redress 'the violation established'—that is, the promulgation of an unlawful rule.").

### IV.    Defendants are not entitled to a bond or stay.

Defendants ask that, if the Court enters an injunction, it impose a bond and stay any relief for seven days while the government decides whether to appeal. Neither measure is warranted.

As to the bond, Federal Rule of Civil Procedure 65(c) "vest[s] broad discretion in the district court to determine the appropriate amount of an injunction bond," *DSE, Inc. v. United*

*States*, 169 F.3d 21, 33 (D.C. Cir. 1999), "including the discretion to require no bond at all," *P.J.E.S. ex rel. Escobar Francisco v. Wolf*, 502 F. Supp. 3d 492, 520 (D.D.C. 2020). "A bond 'is not necessary where requiring [one] would have the effect of denying the plaintiffs their right to judicial review of administrative action.'" *Nat'l Council of Nonprofits v. OMB*, No. 25-cv-239-LLA, 2025 WL 597959, at *19 (D.D.C. Feb. 25, 2025) (quoting *NRDC, Inc. v. Morton*, 337 F. Supp. 167, 168 (D.D.C. 1971)) (appeal filed). Defendants' requested bond, which would cover all of the money due to Plaintiffs and other ILAB grantees, would effectively deny Plaintiffs their right to review. If Plaintiffs had access to the full amount of funds lost when Defendants terminated all ILAB projects, they would not be suffering the irreparable harm that justifies injunctive relief. A bond is also not necessary because, to the extent vacating Defendants' termination of cooperative agreements will require the government to expend money, that money has already been appropriated by Congress for that purpose, and Defendants concede that they could not redirect funds from previous-year appropriations statutes to other valid purposes.

Defendants' request for an administrative stay of any injunction is also premature. "If Defendants, after reviewing" the Court's injunction, "believe that a stay pending appeal is warranted, they may make a request consistent with Federal Rule of Appellate Procedure 8." *Nat'l Council of Nonprofits*, 2025 WL 597959, at *19 n.14.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant Plaintiffs summary judgment on Counts I through IV of their complaint and/or grant preliminary relief. Plaintiffs further request that the Court declare Defendants' actions unlawful and set aside the actions Defendants took to terminate all ILAB cooperative agreements that were terminated between March 13 and March 27, 2025.

Dated: May 28, 2025                    Respectfully submitted,

                                       /s/ Stephanie Garlock
                                       Stephanie Garlock (DC Bar No. 1779629)
                                       Allison M. Zieve (DC Bar No. 424786)
                                       Nicolas A. Sansone (DC Bar No. 1686810)
                                       Public Citizen Litigation Group
                                       1600 20th Street NW
                                       Washington, DC 20009
                                       (202) 588-1000

                                       *Counsel for Plaintiffs*