**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

|  |  |  |
|---|---|---|
| AMERICAN CENTER FOR INTERNATIONAL LABOR SOLIDARITY, *et al.*, | ) ) ) ) ) | |
| *Plaintiffs*, | ) ) | |
| v. | ) ) | Case No. 1:25-cv-01128 (BAH) |
| LORI CHAVEZ-DEREMER, in her official capacity as Secretary of Labor, *et al.* | ) ) ) ) | |
| *Defendants*. | ) | |

---

**DEFENDANTS' REPLY IN SUPPORT OF
CROSS-MOTION FOR SUMMARY JUDGMENT ON COUNTS I–IV**

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................ 1

ARGUMENT .................................................................................................................. 2

I.    The Court lacks subject-matter jurisdiction over Plaintiffs' claims because they pertain to cooperative grant agreements. .............................................................. 2

II.    Plaintiffs' constitutional claim (Count I) fails. ....................................................... 8

    A.    A free-floating constitutional right of action is not available because of potential alternative remedies. .................................................................. 8

    B.    Plaintiffs' separation-of-powers claim is at most statutory, not constitutional, and meritless........................................................................ 9

    C.    Plaintiffs' requested relief threatens the separation of powers. ................ 10

III.    Plaintiffs' APA claims fail............................................................................... 11

    A.    APA review is unavailable because of potential alternative remedies. .... 11

    B.    Termination of these agreements is committed to agency discretion by law. ..................................................................................... 13

    C.    Defendants' actions are not contrary to statute (Counts II–IV). ............... 13

IV.    Plaintiffs are not entitled to their requested relief................................................ 17

    A.    Plaintiffs' alleged injuries can be remedied at law. ................................. 17

    B.    The balance of the equities and public interest disfavor injunctive relief. 17

    C.    Any relief must be limited to redress only *Plaintiffs'* alleged injuries. .... 18

CONCLUSION................................................................................................................ 19

## CASES

*Am. Ground Transp., Inc. v. United States*,
    165 Fed. Cl. 659 (2023) ............................................................................ 6

*Am. Library Ass'n v. Sonderling*, No. 1:25-cv-01050 (RJL), 2025 WL 1615771
    (D.D.C. June 6, 2025) ............................................................................... 4

*Armstrong v. Exceptional Child Ctr., Inc.*,
    575 U.S. 320 (2015) ................................................................................... 8

*Bd. of Governors of the Fed. Rsrv. Sys. v. MCorp Fin., Inc.*,
    502 U.S. 32 (1991) ..................................................................................... 8

*Bowen v. Massachusetts*,
    487 U.S. 879 (1988) ............................................................................. 3, 12

*Califano v. Yamasaki*,
    442 U.S. 682 (1979) ................................................................................. 18

*California v. U.S. Dep't of Educ.*,
    132 F.4th 92 (1st Cir. 2025), *stayed*, 145 S. Ct. 966 (Apr. 4, 2025) .......... 2

*California v. U.S. Dep't of Educ.*,
    No. CV 25-10548, 2025 WL 760825 (D. Mass. Mar. 10, 2025),
    *stayed* 145 S. Ct. 966 (Apr. 4, 2025) ......................................................... 3

*Chi. Women in Trades v. Trump*,
    No. 25 C 2005, 2025 WL 1331743 (N.D. Ill. May 7, 2025) ................... 10

*City of New Haven v. United States*,
    809 F.2d 900 (D.C. Cir. 1987) ................................................................ 14

*City of New York v. Train*,
    494 F.2d 1033 (D.C. Cir. 1974), *aff'd*, 420 U.S. 35 (1975) ....................... 9

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ................................................................................. 18

*Columbus Reg'l Hosp. v. United States*,
    990 F.3d 1330 (Fed. Cir. 2021) ................................................................. 6

*Crowley Gov't Servs. v. GSA*,
    38 F.4th 1099 (D.C. Cir. 2022) ............................................................ 5, 6

*Dalton v. Specter*,
    511 U.S. 462 (1994) ................................................................................... 9

*Dep't of Educ. v. California,
   145 S. Ct. 966 (2025) (per curiam) ............................................................... passim

Dep't of Homeland Sec. v. Regents of the Univ. of Cal.,
   591 U.S. 1 (2020) ........................................................................................ 18

Dep't of Justice v. FLRA,
   981 F.2d 1339 (D.C. Cir. 1993) ................................................................... 10

District of Columbia v. USDA,
   444 F. Supp. 3d 1 (D.D.C. 2020) ................................................................. 18

E. Palo Alto v. U.S. Dep't of Health & Hum. Servs.,
   No. 25-CV-02847-AMO, 2025 WL 1233674 (N.D. Cal. Apr. 29, 2025) ............... 18

Fed. Express Corp. v. U.S. Dep't of Com.,
   39 F.4th 756 (D.C. Cir. 2022) ................................................................ 10, 11

Garcia v. Vilsack,
   563 F.3d 519 (D.C. Cir. 2009) ................................................................... 12

Gen. Land Off. v. Biden,
   722 F. Supp. 3d 710 (S.D. Tex. 2024) ........................................................ 15

Great-West Life & Annuity Ins. Co. v. Knudson,
   534 U.S. 204 (2002) ..................................................................................... 3

*Ingersoll-Rand Co. v. United States,
   780 F.2d 74 (D.C. Cir. 1985) ........................................................... 4, 6, 9, 12

Int'l Eng'g Co. v. Richardson,
   512 F.2d 573 (D.C. Cir. 1975) ................................................................... 12

Kareem v. Haspel,
   986 F.3d 859 (D.C. Cir. 2021) ................................................................... 18

*Lincoln v. Vigil,
   508 U.S. 182 (1993) ................................................................................... 13

Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak,
   567 U.S. 209 (2012) ................................................................................... 12

Md. Dep't of Hum. Res. v. HHS,
   763 F.2d 1441 (D.C. Cir. 1985) ................................................................... 5

*Megapulse, Inc. v. Lewis,
   672 F.2d 959 (D.C. Cir 1982) ............................................................... passim

*New York v. McMahon*,
   No. CV 25-10601-MJJ, 2025 WL 1463009 (D. Mass. May 22, 2025) ................................... 10

*N. Am. Butterfly Ass'n v. Wolf*,
   977 F.3d 1244 (D.C. Cir. 2020) ............................................................................................... 10

*Perry Cap. LLC v. Mnuchin*,
   864 F.3d 591 (D.C. Cir. 2017) ............................................................................................... 4, 5

*St. Bernard Parish Government v. United States*
   134 Fed. Cl. 730 (2017), *aff'd on other grounds*, 916 F.3d 987 (Fed. Cir. 2019) ................... 7

*Spectrum Leasing Corp. v. United States*,
   764 F.2d 891 (D.C. Cir. 1985) ............................................................................................... 4, 6

*Sustainability Inst. v. Trump*,
   No. 25-1575, 2025 WL 1587100 (4th Cir. June 5, 2025) .......................................................... 3

*Tootle v. Sec'y of Navy*,
   446 F.3d 167 (D.C. Cir. 2006) .................................................................................................. 5

*Train v. City of New York*,
   420 U.S. 35 (1975) ............................................................................................................... 9, 14

*Transohio Sav. Bank v. Dir., Off. of Thrift Supervision*,
   967 F.2d 598 (D.C. Cir. 1992) .................................................................................................. 5

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) ................................................................................................................. 15

*Trump v. United States*,
   603 U.S. 593 (2024) ................................................................................................................. 16

*U.S. Conf. of Catholic Bishops v. U.S. Dep't of State*,
   No. 1:25-cv-00465 (TNM), 2025 WL 763738 (D.D.C. Mar. 11, 2025) ............................... 3-4

*United States v. President & Fellows of Harvard Coll.*,
   323 F. Supp. 2d 151 (D. Mass. 2004) ...................................................................................... 7

*United Steel v. Mine Safety & Health Admin.*,
   925 F.3d 1279 (D.C. Cir. 2019) .............................................................................................. 18

*Warth v. Seldin*,
   422 U.S. 490 (1975) ................................................................................................................. 19

*Widakuswara v. Lake*,
   No. 25-5144, 2025 WL 1288817 (D.C. Cir. May 3, 2025) ..................................................... 10

*Wis. Gas Co. v. FERC*,
    758 F.2d 669 (D.C. Cir. 1985) .................................................................... 17


**STATUTES**

2 U.S.C. § 687 ........................................................................................................ 12

5 U.S.C. § 701 ........................................................................................................ 13

5 U.S.C. § 702 .......................................................................................................... 3

5 U.S.C. § 704 .................................................................................................. 11, 12

5 U.S.C. § 706 ........................................................................................................ 12

19 U.S.C. § 2464 ...................................................................................................... 7

26 U.S.C. § 4081 ...................................................................................................... 7

31 U.S.C. § 1502 .................................................................................................... 15

31 U.S.C. § 1513 .................................................................................................... 16

31 U.S.C. § 1553 .................................................................................................... 15

Trade and Development Act of 2000,
    Pub. L. No. 106-200, 114 Stat. 251 (2000) (codified at 19 U.S.C. § 2464) ............. 7

USMCA Supplemental Appropriations Act, 2019,
    Pub. L. No. 116-113, tit. IX, 134 Stat. 98 (2020) .................................... 13

Further Consolidated Appropriations Act,
    Pub. L. No. 118-47, Div. D, tit. I, 138 Stat. 460 (2024) ........................... 13


**OTHER AUTHORITIES**

U.S. Dep't of Labor, *2023 Findings on the Worst Forms of Child Labor*,
    https://www.dol.gov/sites/dolgov/files/ILAB/child_labor_reports/tda2023/2023-Findings
    -on-the-Worst-Forms-of-Child-Labor.pdf ..................................................... 7

## GLOSSARY OF ABBREVIATIONS

APA        Administrative Procedure Act

EO         Executive Order

GAO        Government Accountability Office

ILAB       Department of Labor's Bureau of International Labor Affairs

OMB        Office of Management and Budget

DOL        U.S. Department of Labor

**INTRODUCTION**

Plaintiffs seek injunctive relief requiring the reinstatement of grant agreements between Plaintiffs and the Department of Labor's (DOL) Bureau of International Labor Affairs (ILAB). That request is contractual (seeking specific performance), and unjustified. To argue otherwise, Plaintiffs' Reply relies on sweeping and novel propositions that should be rejected. Dkt. No. 24.

Plaintiffs invoke the Constitution and various statutes as supposed bases for a claimed right to continue receiving funds under grants that ILAB has determined are not aligned with agency priorities or the national interest. But none of those authorities requires the agency to make *these* grants to *these* Plaintiffs. Instead, Plaintiffs' claims necessarily depend on their assertion that the grant agreements provide a right to continued funding, and that the Government breached those agreements' terms. That is a run-of-the-mill contract dispute between the Government and private parties, which cannot award Plaintiffs specific performance, and which must be brought in the Court of Federal Claims. The Supreme Court's recent decision in *Department of Education v. California* requires dismissing the Complaint, 145 S. Ct. 966 (2025) (per curiam), as does well-established D.C. Circuit precedent.

Plaintiffs' claims for partial summary judgment fare no better.[1]

Plaintiffs' "*ultra vires*" claim (Count I) must be dismissed because a contract action provides a meaningful and adequate alternative remedy. Count I is also statutory, not truly constitutional, because it relies solely on spending statutes to assert a Spending Clause violation and is therefore foreclosed. This claim also fails on the merits because Plaintiffs now admit that ILAB has "authority" to "cancel[ ] individual cooperative agreements where appropriate under the terms of those agreements and relevant regulations." Reply 19. That admission forecloses *ultra vires* review, because it confirms that Plaintiffs allege a mere legal error, not any action beyond

---

[1] In accordance with the Court's treatment of Defendants' Opposition as a cross-motion for partial summary judgment on Counts I–IV, Defendants limit this "reply in support thereof" to arguments on those Counts. *See* Minute Order (June 4, 2025, 5:20 PM). Defendants maintain their arguments regarding preliminary injunctive relief as stated in their Opposition. Dkt. No. 19.

the Government's sovereign authority. And, in any event, Defendants' actions are consistent with the agreements, relevant regulations, and statutes alike.

Plaintiffs' remaining claims under the APA are unreviewable for two independent reasons: there are adequate alternative remedies, and ILAB's decisions how to prioritize discretionary funding are committed to agency discretion by law. These contrary-to-statute claims also fail because Plaintiffs still have identified no statutory entitlement to the specific funds that were terminated, meaning those statutes simply have nothing to say about Plaintiffs' claim that their termination notices were inappropriate. Again, their dispute arises under those agreements and contractual regulations incorporated therein.

Lastly, Plaintiffs' Reply (i) confirms that their injuries are economic and can be remedied at law without injunctive relief; (ii) offers little to no response to Defendants' arguments that injunctive relief is not in the public interest and the balance of equities weighs against it; and (iii) provides no basis (legal or factual) for Plaintiffs' plea to reinstate unidentified non-parties' unidentified government contracts.

Accordingly, the Court should deny Plaintiffs' motion for summary judgment as to Counts I–IV and either dismiss this case for lack of jurisdiction or grant Defendants summary judgment as to those Counts.

## ARGUMENT

## I.    The Court lacks subject-matter jurisdiction over Plaintiffs' claims because they pertain to cooperative grant agreements.

**1.** Plaintiffs' attempts to distinguish the Supreme Court's decision in *Department of Education v. California* fail. There, as here, "each grant award takes the form of a contract between the recipient and the government." *California v. U.S. Dep't of Educ.*, 132 F.4th 92, 96 (1st Cir. 2025), *stayed*, 145 S. Ct. 966 (Apr. 4, 2025). There, as here, plaintiffs challenge the agency's "actions as insufficiently explained, insufficiently reasoned, and otherwise contrary to law." *Id.* at 97. There, as here, plaintiffs seek "to once again make available already-appropriated federal funds for existing grant recipients"—without explicitly pleading damages or a breach of contractual

2

terms. *Id.* In other words, there, as here, plaintiffs "seek equitable relief in the form of reinstatement of the [terminated] grants" and "seek to enjoin Defendants from implementing, giving effect to, maintaining, or reinstating under a different name the termination of any previously awarded … grants." *California v. U.S. Dep't of Educ.*, No. CV 25-10548, 2025 WL 760825, at *1 (D. Mass. Mar. 10, 2025), *stayed*, 145 S. Ct. 966 (Apr. 4, 2025); *see* Reply 6 ("Plaintiffs ask[ ] the Court to declare that Defendants' wholesale termination of ILAB's statutorily mandated grant and cooperative agreements is unlawful and to vacate the actions that Defendants have taken to effectuate that wholesale termination of a congressionally required program." (emphasis added)).

Accordingly, there, as here, the same result (dismissal) should follow, for "the Government is likely to succeed in showing the District Court lack[s] jurisdiction to order the payment of money under the APA" in this grant-agreement-termination case. *Dep't of Educ.*, 145 S. Ct. at 968. The "APA's limited waiver of sovereign immunity does not extend to orders 'to enforce a contractual obligation to pay money.'" *Id.* (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002)). "Instead, the Tucker Act" applies. *Id.*; *see also Sustainability Inst. v. Trump*, No. 25-1575, 2025 WL 1587100, at *1 (4th Cir. June 5, 2025) ("This case" about "the cancellation of grants that were funded generally by an authorizing statute but awarded specifically to each grantee by an operative grant agreement" "is much like *Department of Education v. California*."). Plaintiffs' unsupported assertion that the Supreme Court's decision is not "controlling," and citations of cases Plaintiffs characterize as pertaining to "government funding *programs*"—rather than individual grant agreements—cannot change that bottom line. Reply 8 (emphasis added).[2] This Court should apply *Department of Education* and dismiss. *See U.S. Conf. of Catholic*

---

[2] Nor can *Bowen v. Massachusetts*, 487 U.S. 879 (1988), because that case did not address a contractual arrangement between a government agency and private party. *Bowen* concerned states' entitlement to federal funding directly under a statute, so it addressed the APA's exclusion from its waiver of sovereign immunity for suits for "money damages." *See* 5 U.S.C. § 702. As the Supreme Court has explained, its jurisprudence addressing that distinct APA carve-out "has no bearing" on the ability of private parties to obtain injunctions to enforce contractual obligations against the federal government. *Great-West Life & Annuity Ins. Co.*, 534 U.S. at 212. Indeed, *Department of Education* expressly distinguishes *Bowen*. 145 S. Ct. at 968.

*Bishops v. U.S. Dep't of State*, Case No. 1:25-cv-00465 (TNM), 2025 WL 763738, at *8 (D.D.C. Mar. 11, 2025) ("Stripped of its equitable flair, the requested relief seeks one thing: [Plaintiff] wants the Court to order the Government to stop withholding the money due under the Cooperative Agreements. In even plainer English: [Plaintiffs] wants the Government to keep paying up."); *see also Am. Library Ass'n v. Sonderling*, No. 1:25-cv-01050 (RJL), 2025 WL 1615771, at *5–7 (D.D.C. June 6, 2025) (finding that *Department of Education* foreclosed plaintiffs' likelihood of establishing jurisdiction to review grant terminations).

   **2.** On the two factors that courts consider to determine whether an action is essentially contractual (source and nature of rights asserted, and type of relief sought), Plaintiffs' position proves impossible. Without their contracts, there would be no source for the rights they assert. And without specific performance of those contracts, there would be nothing left of the relief they seek. The distinguishable cases and dicta that Plaintiffs put forward do not alter those two fundamental facts. At bottom, the question they ask this Court to resolve is "whether the contract[s] forbid[ ] termination under these conditions." *Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 78 (D.C. Cir. 1985). That's a contract dispute bound for the Court of Federal Claims.

   To begin, Plaintiffs have identified no statute entitling them to receive any specific appropriation or funding. This omission confirms that the only possible source of their asserted rights (whether to the reinstatement of their terminated agreements, or, more accurately, to the funding they provided) was their now-terminated agreements. In other words, Plaintiffs' rights do not "exist[ ] prior to and apart from rights created under the contract[s]." *Spectrum Leasing Corp. v. United States*, 764 F.2d 891, 894 (D.C. Cir. 1985). And Plaintiffs do "seek to enforce [a] duty imposed upon" the government "by the … contracts to which" the government "is a party." *Perry Cap. LLC v. Mnuchin*, 864 F.3d 591, 619 (D.C. Cir. 2017). None of the statutory or constitutional provisions that Plaintiffs cite creates rights that are "truly independent" from the contractual rights at the core of this dispute. *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 969–70 (D.C. Cir 1982).

   Tellingly, each of Plaintiffs' primary cases about the source and nature of asserted rights

involved far different circumstances than the grant agreements directly at issue here. *See* Reply 3–5. Unlike a challenge to new "minimum capital requirements for savings and loan associations" that could not "result in the payment of money damages to [plaintiff]," *Transohio Sav. Bank v. Dir., Off. of Thrift Supervision*, 967 F.2d 598, 600, 608 (D.C. Cir. 1992), *abrogation on other grounds recognized by Perry Cap. LLC*, 864 F.3d at 620, Plaintiffs' challenge is entirely about reinstating their terminated contracts to resume the flow of payments. Indeed, in *Transohio*, "[n]either specific performance nor rescission would result in the payment of money damages to [plaintiff] from the Treasury." *Id.* The opposite is true here.[3] A case about a state grant-in-aid program (not administered through contracts with the Federal Government) likewise has no bearing here, where the contracts' existence, termination, and terms are directly at issue. *See Md. Dep't of Hum. Res. v. HHS*, 763 F.2d 1441, 1449 (D.C. Cir. 1985). Essentially "tort claims" about infringement upon a statutory right to be free from unauthorized audits are plainly distinguishable, especially where that case's plaintiff was not even a party to the contract involved. *Crowley Gov't Servs. v. GSA*, 38 F.4th 1099, 1108–09 (D.C. Cir. 2022). A case where the court had "no way of knowing whether [the plaintiff] ever will be entitled to any monies if he succeeds before the District Court," *Tootle v. Sec'y of Navy*, 446 F.3d 167, 175 (D.C. Cir. 2006), is inapposite— Plaintiffs clearly are seeking to obtain monies. And again, the contractual issues here are anything but "tangential," which *Megapulse* suggested may be insufficient to trigger the Tucker Act. 672 F.2d at 968. The "tangential" examples *Megapulse* mentioned, "a license ... raised as a defense in an action for trespass, or a purchase contract ... raised to counter an action for conversion," are a far cry from Plaintiffs' claims here that their agreements were invalidly terminated and must be reinstated. *Id.* (describing circumstances where court merely "may have to rule on a contract

---

[3] *Transohio* also invoked as an example a "due process claim" that "rested" merely "on the premise that [plaintiff's] contract with the government gave him a constitutionally protected property interest." 967 F.2d at 610. Here, of course, Plaintiffs' contracts are not merely a "premise" whose existence must be established to trigger some other right—they create the asserted rights (to funding). Plaintiffs also neglect to mention that *Transohio* explicitly acknowledged the D.C. Circuit's "very specific holdings that the APA does *not* waive sovereign immunity for contract claims seeking specific relief." *Id.* at 613.

issue").

Further, the distinctions Plaintiffs attempt to draw between the contractual remedy of specific performance and their request for reinstatement of terminated contracts are not "rational." *Id.* at 969–70. Whether phrased as a declaration that the agreements are again in force, or an order to reinstate the agreements, or an order not to effectuate the termination of the agreements, Plaintiffs are asking this Court to require the Government to perform its obligations under those agreements (*i.e.*, pay them money). That remedy is quintessentially contractual. *See Ingersoll-Rand Co.*, 780 F.2d at 79–80; *Spectrum Leasing*, 764 F.2d at 893–95. And that contractual nature supersedes any attempt at artful pleading to avoid the Court of Federal Claims. *See Ingersoll-Rand*, 780 F.2d at 79–80 (when requested relief "amount[s] to a request for specific performance," plaintiff "may not sidestep" Tucker Act by "avoiding a request for damages"); *see Crowley*, 38 F.4th at 1107 (warning against rewarding "creative drafting").

**3.** Plaintiffs' assertion that their contracts are not contracts for Tucker Act purposes falls flat. *See* Reply 8–10. Plaintiffs do not dispute that consideration as insubstantial as "a mere peppercorn" suffices. Defs.' Opp'n 16, Dkt. No. 19 (quoting *Am. Ground Transp., Inc. v. United States*, 165 Fed. Cl. 659, 666 (2023)). Nor do they dispute that the agreements provided at least some "direct, tangible benefit[ ]" to the Government—indeed, their arguments about the virtues of the agreements repeatedly concede as much. Reply 9; *see* Defs.' Opp'n 15–17. Accordingly, their quibbles over the "substantial[ity]" of *certain* direct, tangible benefits is beside the point. Regardless of whether the grant agreements at issue *also* served some abstract interests or policy goals, they provided some direct, tangible benefits—including monitoring, compliance, and transparency facilitation, taxes, and intellectual property rights—and therefore "constitute government contracts for Tucker Act purposes." *Columbus Reg'l Hosp. v. United States*, 990 F.3d 1330, 1338–39 (Fed. Cir. 2021) (requiring only offer, acceptance, mutuality of intent, action by an official with authority to bind the government (which are not disputed), and consideration).

As to the specific, direct, tangible benefits that Defendants identified, Plaintiffs' arguments range from nonresponsive to nonexistent. The grant agreements' facilitation of trade agreement

labor obligation monitoring and compliance and increased transparency are not merely abstract. Defs.' Opp'n 15. The knowledge and information benefits resemble those the Federal Circuit has recognized can constitute consideration. *Id.* at 15–16. The Buy American and Fly American requirements indisputably confer a direct monetary benefit on the United States whenever federal taxes are collected on relevant purchases, *see, e.g.*, 26 U.S.C. § 4081 (federal excise tax on gasoline), or on *any* airfare, *see id.* § 4261 (federal excise tax of 7.5% on any American airfare and of $12.00 on any international air travel that begins or ends in the United States). *See* Defs.' Opp'n 16. The same is true for the Government's royalty-free intellectual property rights, which extend to sometimes substantial original reports and analyses created using ILAB grant funds. *Id.*[4] And Plaintiffs' Reply fails to acknowledge that supporting broader, tangible policy aims through grant agreements also can suffice for consideration, especially, as here, when they implicate the Nation's finances. Defs.' Opp'n 16–17 (citing *United States v. President & Fellows of Harvard Coll.*, 323 F. Supp. 2d 151, 164 (D. Mass. 2004)).[5] Again, the inquiry for consideration does not turn on the significance or equivalency of the economic values exchanged or the Government's directly receiving any funds; it turns on whether there is some direct, tangible benefit—something Plaintiffs do not meaningfully dispute these agreements all conferred in one form or another.

---

[4] These reports are often used as source material for ILAB's statutorily mandated report on the efforts of trade partners to eliminate the worst forms of child labor. Trade and Development Act of 2000, Pub. L. No. 106-200, § 412(c), 114 Stat. 251, 291 (2000) (codified at 19 U.S.C. § 2464(c)). For example, in ILAB's 2023 edition of this report, a report developed with ILAB cooperative agreement assistance was cited as a source in the chapter on Honduras. U.S. Dep't of Labor, *2023 Findings on the Worst Forms of Child Labor*, Honduras ch. at 388 & n.3, 868, available at https://www.dol.gov/sites/dolgov/files/ILAB/child_labor_reports/tda2023/2023-Findings-on-the-Worst-Forms-of-Child-Labor.pdf.

[5] As Defendants explained, *St. Bernard Parish Government v. United States* has been rightly rejected by other decisions of the same court. *See* 134 Fed. Cl. 730, 736 (2017), *aff'd on other grounds*, 916 F.3d 987 (Fed. Cir. 2019); Defs.' Opp'n 17 n.5. It also is inapposite on its own (flawed) terms, because Defendants have identified numerous "direct" benefits here that are not merely "incidental." *St. Bernard Par. Gov't*, 134 Fed. Cl. at 736.

\*      \*      \*

The sweeping and novel positions that Plaintiffs press—to ignore on-point Supreme Court precedent, to permit essentially any contract-termination claim to evade the Court of Federal Claims through artful pleading, and to discount several forms of consideration long and repeatedly recognized by courts—should be rejected. Simply put, because Plaintiffs believe the contracts under which they received federal tax dollars were terminated inappropriately, they sued for an order requiring the Government to reinstate and resume payments pursuant to those contracts. That dispute is "essentially contractual." *Megapulse*, 672 F.2d at 967. So jurisdiction for such claims lies exclusively in the Court of Federal Claims. *Dep't of Educ.*, 145 S. Ct. at 968.

## II.    Plaintiffs' constitutional claim (Count I) fails.

Perhaps realizing that the APA's limited waiver of sovereign immunity plainly does not allow their breach-of-contract claims, Plaintiffs now lead with their *ultra vires* claim (Count I). *See* Reply 11. But that pivot still fails, on both jurisdiction and the merits. On jurisdiction, alternative remedies foreclose a free-floating right of action. And on the merits, Plaintiffs' concession that Defendants have "authority" to terminate ILAB cooperative grant agreements forecloses their argument that Defendants acted beyond any statutory or constitutional authority. Reply 19. On the contrary, Plaintiffs' requested relief would contravene the APA and the constitutional separation of powers alike.

### A.    A free-floating constitutional right of action is not available because of potential alternative remedies.

As explained *supra* Part I, the Tucker Act impliedly precludes a non-statutory equitable action based on Plaintiffs' breach-of-contract claims. *See Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015) ("The power of federal courts of equity to enjoin unlawful executive action is subject to express and implied statutory limitations."). That path offers a "meaningful and adequate means of vindicating" Plaintiffs' rights, so an *ultra vires* right of action is unavailable. *Bd. of Governors of the Fed. Rsrv. Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 43 (1991).

Plaintiffs' arguments that recognizing an *ultra vires* right of action here would not create a

workaround to avoid the Tucker Act defeat themselves. Plaintiffs recognize that their claim must show more than "mere legal or factual error." Reply 12. But they also concede that ILAB has "authority" to "cancel[ ] individual cooperative agreements where appropriate under the terms of those agreements and relevant regulations." Reply 19. That admission confirms that this dispute is about alleged legal errors in the agency's actions under contractual terms and regulations incorporated therein, not some alleged action beyond the authority of the sovereign. In other words, the question is whether the agency exercised its termination authority (which Plaintiffs recognize) appropriately—not whether the agency has such authority at all. As such, recognizing an *ultra vires* right of action here *would* open the district courthouse doors to any government contract holder alleging a breach. *See Ingersoll-Rand Co.*, 780 F.2d at 77 ("alleging violations of regulatory or statutory provisions rather than breach of contract" does "not avoid the jurisdictional bar" of the Tucker Act). This Court should reject that end run.[6]

> **B.    Plaintiffs' separation-of-powers claim is at most statutory, not constitutional, and meritless.**

Plaintiffs do not meaningfully dispute that their separation-of-powers claim collapses into their statutory claims. *See* Reply 12–13 (characterizing Count I as about "absence of any statutory authority" or "defiance of contrary statutory authority"). That renders their *ultra vires* claim "constitutional" in name only. *Dalton v. Specter*, 511 U.S. 462, 474 (1994) (recognizing a separation-of-powers claim alleging that the President violated a statutory mandate as a statutory claim). And untenable. *Id.* at 472–73 & n.5; *see also Ingersoll-Rand*, 780 F.2d at 78 (Tucker Act governs challenge to contract termination, "despite plaintiff's allegations of statutory and constitutional violations").

---

[6] Plaintiffs' citation of *Train v. City of New York* is unavailing. 420 U.S. 35 (1975). There, the President "by letter … directed" the agency not to allot funds that a statute directed "shall be allotted." *Id.* at 39–40. Plaintiffs brought an APA case and a waiver of sovereign immunity was "conce[ded]" in the court of appeals. *City of New York v. Train*, 494 F.2d 1033, 1038 (D.C. Cir. 1974), *aff'd*, 420 U.S. 35 (1975). It did not establish, as Plaintiffs suggest, a free-floating constitutional right of action for alleged impoundments.

In all events, Count I fails on the merits. Again, as Plaintiffs recognize, the bar for prevailing on an *ultra vires* claim is exceedingly high. Reply 12 (citing *Fed. Express Corp. v. U.S. Dep't of Com.*, 39 F.4th 756, 764 (D.C. Cir. 2022) ("mere legal … error" insufficient); *see N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1262 (D.C. Cir. 2020) (*Ultra vires* review of agency action "is intended to be of extremely limited scope."); Defs.' Opp'n 20 (collecting cases).

Plaintiffs cannot make this "nearly insurmountable showing," *Dep't of Justice v. FLRA*, 981 F.2d 1339, 1343 (D.C. Cir. 1993), because the statutes they cite merely required ILAB to obligate the appropriated amounts through contracts—which ILAB did. *See infra* Part III.C.1. The only "extreme agency error[s]" Plaintiffs allege are ILAB's individual decisions to terminate the grants (over the course of multiple weeks). But nothing in the appropriations statutes prohibited ILAB from doing so, let alone in a "clear and mandatory" way. *N. Am. Butterfly Ass'n*, 977 F.3d at 1263.[7]

Indeed, Plaintiffs now concede the agency has "authority" to "cancel[ ] individual cooperative agreements where appropriate under the terms of those agreements and relevant regulations." Reply 19. Put another way, they concede that their complaint really is that Defendants did not appropriately exercise their termination authority. That plants this case firmly in the realm of alleged "legal error," not lack of sovereign authority. *Fed. Express Corp.*, 39 F.4th at 764.

### C.    Plaintiffs' requested relief threatens the separation of powers.

Plaintiffs do not dispute that ILAB and its grant agreements are instruments of foreign affairs or that the agency determined the agreements at issue were no longer aligned with agency priorities and the national interest. And Plaintiffs admit both Defendants' "wide latitude in both

---

[7] The fact that no statute names Plaintiffs distinguishes this case from *Widakuswara v. Lake*, where specific grantees were named in the appropriation statute. *See* No. 25-5144, 2025 WL 1288817, at *12 (D.C. Cir. May 3, 2025) (Pillard, J., dissenting from grant of stay pending appeal). Here, Plaintiffs can claim *no* "Congressional basis" for their entitlements without the "individual grants" because Plaintiffs can claim no statutory "allocations." *Id.* Similarly, Plaintiffs' cited cases about "do[ing] away with" an entire Department, *New York v. McMahon*, No. CV 25-10601-MJJ, 2025 WL 1463009, at *23 (D. Mass. May 22, 2025) (appeal pending), and a non-contractual grant that was not, in fact, terminated, *Chi. Women in Trades v. Trump*, No. 25 C 2005, 2025 WL 1331743, at *5 (N.D. Ill. May 7, 2025), are inapplicable.

10

substance and form" under the appropriations statutes and "authority" to terminate grant agreements under their terms and relevant regulations. Pls.' Mem. 24–25, Dkt. No. 9-1; Reply 19. Nevertheless, Plaintiffs request that this Court direct Defendants how to spend those funds by demanding specific performance of their specific agreements. *See* Prayer for Relief, Compl. 24; Mot. for Prelim. Inj., Dkt. No. 9. *That* is the true separation-of-powers threat at issue in this case. As in Plaintiffs' primary case about the standard for *ultra vires* relief, "the *coup de grâce* for [plaintiff's] *ultra vires* argument would be the well-established rule of judicial deference to the Executive Branch in matters that involve foreign policy…." *Fed. Express Corp.*, 39 F.4th at 769.[8]

*     *     *

In the end, Plaintiffs' *ultra vires* theory cannot possibly be right. The notion that the general appropriations statutes and therefore the Constitution require sticking to each of these foreign affairs contracts is astounding in its implications. And this Court should reject it.

## III.    Plaintiffs' APA claims fail.

Defendants are entitled to summary judgment on Plaintiffs' APA contrary-to-statute claims (Counts II–IV) because APA review is unavailable or, alternatively, because the grant agreement terminations did not violate any statute.

To begin, Plaintiffs' Reply reveals that their standing problem is also a final-agency-action problem under 5 U.S.C. § 704. They identify no final agency action other than the 15 grant agreement terminations alleged in their Complaint. They cannot challenge "the effect" of other unspecified actions; nor can they amalgamate other unspecified actions and challenge them as one with the 15 they do identify. Reply 1; *see* Defs.' Opp'n 30 n.10. Accordingly, APA review is foreclosed as to those unspecified actions for this additional, independent reason.

### A.    APA review is unavailable because of potential alternative remedies.

Even as to the 15 grant agreement terminations Plaintiffs identify, APA review is

---

[8] The immigration cases Plaintiffs cite (about "immigration restrictions," "visas," a "Temporary Protected Status," and "refugee admissions") are not to the contrary. *See* Reply 15. None involved the Executive's contract termination authority or spending discretion.

unavailable because of other "adequate remed[ies]." 5 U.S.C. § 704.

**1.** First, the Tucker Act impliedly forecloses APA review of all three contrary-to-statute claims (Counts II–IV) for the reasons Defendants have explained. *See supra* Part I. Plaintiffs cannot avoid that bar by reframing breach-of-contract claims as contrary-to-statute ones. Again, the D.C. Circuit has already held as much. *See Ingersoll-Rand*, 780 F.2d at 74 (dismissing claims that a termination "contravened" the APA because "the essential rights at stake here are contractual"). And for good reason: allowing plaintiffs to bring their breach-of-contract claims under 5 U.S.C. § 706 would create a ready and complete end-run around the Tucker Act. *See Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012). After all, "[i]t is hard to conceive of a claim falling no matter how squarely within the Tucker Act which could not be urged to involve as well agency error subject to review under the APA." *Megapulse*, 672 F.2d at 967 n.34 (quoting *Int'l Eng'g Co. v. Richardson*, 512 F.2d 573, 580 (D.C. Cir. 1975)).[9]

**2.** Second, the Impoundment Control Act's authorization of "Suits by Comptroller General" independently forecloses APA review of Count III. 2 U.S.C. § 687. The Supreme Court has recognized that the APA "does not provide additional judicial remedies in situations where the Congress has provided special and adequate review procedures." *Bowen*, 487 U.S. at 903. And § 687 is just such a review procedure, reflecting Congress's determination as to who should investigate and, if necessary, litigate alleged violations of the Act "in court." 5 U.S.C. § 704. Plaintiffs may submit concerns to either the Government Accountability Office (GAO) directly, or to DOL's Inspector General, who in turn may report alleged impoundments to GAO. But the statute provides only that exclusive enforcement mechanism in court.

---

[9] *Bowen*, which, again, involved no contractual arrangement does not do the work Plaintiffs need it to. *See supra* Note 2; Reply 16. Relief in the Court of Federal Claims, if Plaintiffs establish entitlement, would be money damages. Relief here, if Plaintiffs establish entitlement, would be money owed under their agreements. That potentially equivalent relief is far from "doubtful" or "limited" by comparison. *Bowen*, 487 U.S. at 901. Rather, that relief is "of the same genre," such that APA review is foreclosed. *Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009) ("alternative remedy need not provide relief identical to relief under the APA").

**B.** **Termination of these agreements is committed to agency discretion by law.**

Plaintiffs' concessions about ILAB's "wide latitude in both substance and form" under the appropriations statutes and "authority" to terminate grant agreements confirm that 5 U.S.C. § 701 forecloses APA review here. Pls.' Mem. 24–25; Reply 19. Their complaint boils down to a dispute over "how" to allot appropriated funds, which Plaintiffs further admit is committed to agency discretion. Reply 17; *see Lincoln* v. *Vigil*, 508 U.S. 182, 193 (1993). Congress has directed no activity specific to Plaintiffs or specific to their terminated grant agreements—indeed, the only activities Congress directed (*i.e.*, obligating the appropriated funds through cooperative grant agreements) undisputedly occurred. The question that APA review then would ask is whether a given termination is in accord with ILAB's priorities and the national interest. There is no judicially manageable standard by which to make that policy call. Indeed, Plaintiffs offer none, other than their own policy preferences.

**C.** **Defendants' actions are not contrary to statute (Counts II–IV).**

Over three substantive filings in this Court, Plaintiffs still have not identified any statutory obligation or any statutory prohibition on termination specific to Plaintiffs or their grants. Indeed, there is none, for Plaintiffs' asserted rights to funding arose solely under specific grant agreements. That indelible fact dooms their statutory APA claims on the merits.

**1.** Plaintiffs' cited appropriations statutes appropriated certain funds to ILAB to administer or operate activities through contracts. *E.g.*, Further Consolidated Appropriations Act, Pub. L. No. 118-47, Div. D, tit. I, 138 Stat. 460, 641 (2024); USMCA Supplemental Appropriations Act, 2019, Pub. L. No. 116-113, tit. IX, 134 Stat. 98, 100 (2020). None conferred on any entity a specific right to funding—which is why Plaintiffs fail to identify any statutory provision as the source of their asserted right to payment. Rather, the appropriations statutes allowed ILAB to select which recipients may receive funding "by or through contracts…." *Id.* ILAB did that by executing cooperative agreements. Those agreements obligated the appropriated sums and discharged ILAB's only relevant duty under the statutes, so there is no plausible (much less established) statutory violation.

ILAB's decision to subsequently terminate individual grants upon developing serious concerns about their alignment with agency priorities and the national interest does not amount to a statutory violation. It would be unprecedented to conclude that, in authorizing ILAB to enter into contracts of its choosing, Congress somehow impliedly prohibited the agency from terminating those grants under any circumstances. And even plaintiffs do not really believe that; they admit ILAB has the "authority" to terminate grants. Reply 19. Nothing in the statutes limits that authority. Instead, Plaintiffs maintain that, because each statute's availability period has passed, terminating the grants would mean the funds cannot be spent as Congress directed, creating a statutory problem. *See* Reply 17. That does not follow, for the reasons just explained: The statutes appropriated funds to be obligated to grantees *like* Plaintiffs through contracts by certain dates (which happened), but that does not require ILAB to keep funding those grantees no matter what.

**2.** Plaintiffs' Impoundment Control Act claim (Count III) fares no better. Its application (i) is foreclosed by the provision for enforcement by the Comptroller General and (ii) would fail on the merits in any event.

*First*, Plaintiffs ignore the numerous cases Defendants cite determining that private Impoundment Control Act claims are unreviewable. Defs.' Opp'n 27; *see* Reply 18 n.4. Nor do they identify any valid authority for private enforcement of the Impoundment Control Act. *Train* has nothing to say about private enforcement because the Government there conceded (and the Court determined) that the Act's passage had no effect on "pending" cases like *Train*. 420 U.S. at 41 n.8. The "private action" Plaintiffs say involved a challenge to the "validity of impoundments" actually challenged the legislative veto provision of the Act, so it was not a challenge *pursuant to* the act but *against* the Act itself. Reply 18 (citing *City of New Haven v. United States*, 809 F.2d 900, 901 (D.C. Cir. 1987)). Three out of four of Plaintiffs' footnoted cases did not actually consider a claim that the Act had been violated. *See* Reply 18 n.4. And the couple of footnoted sentences in the one that did do not move the needle. *See id.* (citing *AIDS Vaccine Advoc. Coal. v. U.S. Dep't of State*, 2025 WL 752378, at *17 n.17 (D.D.C. Mar. 10, 2025)). Nor did any of Plaintiffs' cases consider that such private enforcement would create grave constitutional concerns, "infring[ing]"

14

on both Congress's asserted authority to enforce the Act through the Comptroller General (or to choose non-enforcement) and "the Executive Branch's Article II authority" to execute appropriations laws. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 429 (2021). Therefore this Court should find Count III "unreviewable." *Gen. Land Off. v. Biden*, 722 F. Supp. 3d 710, 735 (S.D. Tex. 2024)

     *Second*, Plaintiffs' Reply confirms that they read the Impoundment Control Act so broadly that any contract termination where the obligated funds are statutorily unavailable for reallocation could be pleaded as a standalone claim in district court. Their reading also has the added vice of requiring the President to go through the Act's onerous procedures any time the Government wants to cancel a grant agreement after the underlying funding authority has expired. That has never been the Government's practice and that cannot be right.

     Here, the agency exercised termination "authority" that Plaintiffs concede it has, Reply 19; now, another statute independently prevents re-obligation, as Plaintiffs recognize. *See* 31 U.S.C. §§ 1502(a), 1553(a); Pls.' Mem. 20. Accusations regarding Defendants' intent therefore are beside the point; whether or not they *want* to re-obligate the unspent funds, doing so would be unlawful since the funds are expired (again, as Plaintiffs also concede). Pls.' Mem. 20.

     And even if Defendants' "intent" were relevant, the lone social media post Plaintiffs cite comes nowhere close to meeting their burden at summary judgment. *See* Reply 19–20. That post postdates the terminations at issue, which were each supported by the rationales stated in grant-specific termination notices. It also does not conflict with those stated rationales. It says nothing about whether the terminations were *for the purpose of* creating savings, as opposed to the kind of changed agency priorities that Plaintiffs effectively concede may appropriately drive a termination decision. *See* Reply 19. And as the GAO has noted (in a decision relied on by Plaintiffs' primary source regarding executive "intent," the GAO Redbook): "It is often difficult to discern the intent of agency officials. However, without concrete evidence of an intent to withhold budget authority, we may not, under the guise of an impoundment review, stand in the shoes of an agency and second-guess managerial policies and actions otherwise committed by law to the agency's exercise

of discretion." GAO, B-229326 August 29, 1989. That same principle applies to courts. *Cf.* *Trump v. United States*, 603 U.S. 593, 618–19 (2024) (foreclosing "judicial examination" of executive intent based "on the mere allegation of improper purpose").

**3.** Plaintiffs' Anti-Deficiency Act accusations are not only insufficient to support summary judgment; they are baseless. Plaintiffs neither named the Office of Management and Budget (OMB) as a defendant, nor pointed to any evidence that OMB has created a reserve. That should end the matter, because Defendants did not apportion the appropriations at issue in this case.[10]

Even if OMB were a defendant, this claim would fail. Simply put, reserves are only created through apportionment. Only OMB apportioned the funds at issue here. Therefore, Defendants could not have created a reserve; only OMB could have; and it did not. The only relevant apportionments occurred many months or years before the terminations, when OMB instructed ILAB at what rate to obligate the appropriated funds. *See* 31 U.S.C. § 1513(b); OMB Circular A-11, Sec. 120 (2024). Only then could a reserve have been created within the meaning of the Anti-Deficiency Act—and, again, only by OMB. The grant agreement terminations were not an apportionment or reapportionment, and Plaintiffs cite no authority for treating them as such. Any purported "savings," in the form of terminated and expired funds that eventually must be returned to the Treasury, are not available for re-obligation and are not a reserve for the Act's purposes; they are simply canceled obligations. So 31 U.S.C. § 1513(c) is inapplicable. And Plaintiffs' assertion that "Defendants have conceded" this claim strains credulity. Reply 20.[11]

---

[10] Plaintiffs claim there *can be* "a role" for non-OMB agency heads "in apportioning funds among organizational units and reporting to the President on apportionment," as well as sending OMB "accurate information." Reply 20. But they cite no authority or evidence for Defendants having apportioned any of the appropriated funds at issue. On the contrary, that ultimate authority lies with OMB, not DOL, so DOL could not and did not create a reserve here.

[11] Defendants stand by their arguments that the termination notices were not arbitrary and capricious, but do not expand on that preliminary-injunction argument in this reply in support of partial summary judgment. *See supra* Note 1.

IV.     **Plaintiffs are not entitled to their requested relief.**

A.      **Plaintiffs' alleged injuries can be remedied at law.**

Plaintiffs' Reply confirms that their alleged injuries are solely economic. *See* Reply 22–23. That is perhaps unsurprising given that they sued to reinstate terminated grant agreements. Also unsurprising is Plaintiffs' abandonment of any attempt to argue that they qualify for either exception to black-letter law that economic harm is generally not irreparable. *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985). They have neither alleged an existential threat to their businesses, nor demonstrated that any economic loss would be unrecoverable. *See* Defs.' Opp'n 31–33. Indeed, recoverability is the whole point of the Tucker Act. *See supra* Part I.

Plaintiffs appear to rest their claim for permanent injunctive relief on just two thin reeds. *First*, Plaintiffs argue that they "will not be able to continue any of the projects that ILAB previously supported," "which has made it more difficult for Plaintiffs to pursue their missions, and [caused] a consequent loss of staff expertise and relationships, both of which will be increasingly difficult to replace as time passes." Reply 22. Notably, they do not say *impossible* to pursue or replace, just "difficult." *Id.* That makes sense, because their inability to fund projects in pursuit of their missions is not irreparable; indeed, funding (in the form of damages) plainly would repair it. *Second*, that leaves "reputational harm." *Id.* As Defendants explained, such harms are either recoverable if they are direct, or irrelevant if they are indirect (*i.e.*, blame for canceled funding attributable to Defendants or entities other than Plaintiffs themselves). Defs.' Opp'n 32–33. Neither justifies injunctive relief.[12]

B.      **The balance of the equities and public interest disfavor injunctive relief.**

In response to Defendants' thorough explanation of the reasons why injunctive relief would be inappropriate even if Plaintiffs were to prevail on the merits, *id.* at 33–35, Plaintiffs offer two meager responses. The first is beside the point. The congressional determination that Plaintiffs

---

[12] Defendants stand by their arguments that Plaintiffs' delay in seeking preliminary relief forecloses such relief, but do not expand on that preliminary-injunction argument in this reply in support of partial summary judgment. *See supra* Note 1.

invoke was not about *their* specific agreements or projects, but rather about *ILAB's* discretion to award (and, concordantly, to terminate) contracts of the agency's choosing. That discretion as to specific agreements or projects should not be disturbed by an injunction. Plaintiffs' second response only underscores Defendants' point: they say that the foreign affairs context is not a blank check, but they do not dispute that the nature of the agreements as instruments of foreign affairs tips this factor in Defendants' favor.

### C.    Any relief must be limited to redress only *Plaintiffs'* alleged injuries.

When a plaintiff's standing to challenge a certain action is put at issue, it is typically expected that he will respond with evidence. All the more so here where the standing inquiry is "especially rigorous" because "reaching the merits of the dispute would force [a court] to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional" "in the field[ ] of … foreign affairs." *Kareem v. Haspel*, 986 F.3d 859, 865 (D.C. Cir. 2021) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408–09 (2013)). But not so here, where Plaintiffs offer only a misdirected argument about the scope of "*relief*" rather than the scope of their *standing* or this Court's *jurisdiction*. Reply 24. They cite no allegation or evidence regarding their standing to challenge unspecified grant agreement terminations beyond the 15 to which they were parties, arguing only that relief should extend to any "unlawful" action the Court identifies. *Id.* Plaintiffs provide no authority for such roving jurisdiction. Indeed, their lead case rejects it. *See Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) (conditioning relief on whether "jurisdiction lies over the claims" before determining appropriate scope).[13]

At bottom, Plaintiffs ask the Court to enjoin or declare unlawful unspecified agency actions

---

[13] Plaintiffs' other cases address the scope of relief against singular agency actions, not against allegedly related but unspecified agency actions. *United Steel v. Mine Safety & Health Admin.*, 925 F.3d 1279, 1282, 1287 (D.C. Cir. 2019) (vacating "a final rule"); *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 9 (2020) (vacating "a memorandum"); *Cmty. Legal Servs. in E. Palo Alto v. U.S. Dep't of Health & Hum. Servs.*, No. 25-CV-02847-AMO, 2025 WL 1233674, at *13 (N.D. Cal. Apr. 29, 2025) (appeal pending) (enjoining "only one contract," albeit applicable "nationwide"; *District of Columbia v. USDA*, 444 F. Supp. 3d 1, 49 (D.D.C. 2020) (Howell, J.) (vacating "a rule").

in which they have no personal stake *in addition to* the 15 actions in which they do. Despite injuries limited to specific termination notices they received on several different dates, they claim an unconstrained right to seek relief against other "executive action" as well. Reply 24. Article III bars that unprecedented request. *See Warth v. Seldin*, 422 U.S. 490, 499–500 (1975) (claims "cannot rest … on the legal rights or interests of third parties").[14]

## <u>CONCLUSION</u>

The Court should deny Plaintiffs' motion, and either dismiss the Complaint for lack of jurisdiction or grant Defendants' cross-motion for partial summary judgment.

---

[14] Defendants stand by their arguments that the Court should require a bond and enter a stay should it enter any preliminary relief, but do not expand on those preliminary-injunction arguments in this reply in support of partial summary judgment. *See supra* Note 1.

Dated: June 9, 2025                    Respectfully submitted,

                                       YAAKOV M. ROTH
                                       Acting Assistant Attorney General
                                       Civil Division

                                       JACQUELINE COLEMAN SNEAD
                                       Assistant Branch Director
                                       Civil Division
                                       Federal Programs Branch

                                       _/s/ Charles E.T. Roberts_____
                                       Charles E.T. Roberts
                                        (DC Bar No. 1780573)
                                       Counsel
                                       U.S. Department of Justice
                                       Civil Division
                                       950 Pennsylvania Avenue, N.W.
                                       Washington, D.C. 20530
                                       Tel.: (202) 305-1141
                                       Fax: (202) 616-8470
                                       E-mail: Charles.Roberts2@usdoj.gov

                                       *Attorneys for Defendants*